# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

THE UNITED STATES OF AMERICA
and COMMODITY FUTURES TRADING
COMMISSION,

      Plaintiffs,

      v.                             Case No. 26-CV-749

STATE OF WISCONSIN, et al.,

      Defendants.

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND MEMORANDUM OF LAW IN SUPPORT

## INTRODUCTION

Like any other litigant, the federal government must have Article III standing to file a lawsuit. And so, just like any other litigant, standing requires the federal government to have suffered a "concrete and particularized" injury-in-fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

The United States and the CFTC (collectively, "CFTC") have identified no such injury-in-fact here. The CFTC's standing theory instead rests almost entirely on an abstract harm: the supposed "sovereign injury" the CFTC suffers from the mere existence of Wisconsin's allegedly preempted gambling prohibition. But the CFTC does not cite a single case holding that this alone

creates an injury-in-fact for Article III standing purposes. At best, the CFTC cites a few preemption cases that moved forward without analyzing standing, but such cases—precisely because they never considered standing—are not precedent for the CFTC's expansive theory. Moreover, at least two district courts have recently rejected the proposition that an allegedly preempted state law alone injures the federal government. That makes sense, otherwise the federal government would automatically have standing for every single preemption claim it might want to bring.

The CFTC alternatively argues that Wisconsin's efforts to shut down illegal sports betting have somehow made its job "much more difficult." (Doc. 6:18.) That is a strange position given that sports betting on prediction markets is already illegal under federal law. In any event, the CFTC offers only vague evidence that some of its employees have had to answer questions from regulated parties. That is the CFTC's job, not an injury-in-fact that supports Article III standing.

Because the CFTC hasn't suffered an injury-in-fact, the State moves to dismiss this case under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing.

Separately, the CFTC lacks standing to sue three defendants—the Governor, the Wisconsin Department of Administration's Division of Gaming, and the Division of Gaming's administrator, John Dillett—who have no official

role in enforcing the challenged state statutes. Those defendants should be dismissed under Rule 12(b)(1), even if this case proceeds.

## STATEMENT OF THE CASE

This case arises from three civil enforcement actions the State of Wisconsin filed against various companies that, in the State's view, are causing a public nuisance in Wisconsin. In short, the State of Wisconsin believes that five companies (and their various affiliates)—Kalshi, Robinhood, Coinbase, Polymarket, and Crypto.com—facilitate illegal gambling in Wisconsin by allowing their customers to trade so-called "event contracts" that are, in essence, bets on sporting events. The State therefore sued these companies in state court to put a stop to this unlawful sports betting. *See State of Wisconsin v. Kalshi, et al.*, No. 26CV1284 (Wis. Cir. Ct. Dane Cnty.); *State of Wisconsin v. Blockratize, Inc., et al.*, No. 26CV1285 (Wis. Cir. Ct. Dane Cnty.); *State of Wisconsin v. Foris Dax Mkts., Inc., et al.*, No. 26CV1286 (Wis. Cir. Ct. Dane Cnty.); (*see also* Doc. 1:20–21).

The State's enforcement actions caught the eye of the federal government. Less than a week after the State filed these three state court actions, the CFTC filed this federal case against the State and various state officials. (Doc. 1.) The CFTC's stated goal is "to halt defendants' efforts to apply and enforce preempted state laws to national markets that are governed by federal law," referencing the State's pending civil enforcement actions against

3

these five companies. (Doc. 1:1–2.) The CFTC therefore asks for a declaration that "Wisconsin gambling and betting bans or regulations are preempted by federal law as applied to" companies like the ones the State has sued. (Doc. 1:4.) The CFTC has filed a preliminary injunction motion too. (Doc. 6.)

## LEGAL STANDARD

When considering a pleading-stage motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, a court "accept[s] the well-pleaded facts as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023). Here, the CFTC seeks to bolster its standing through a declaration (*see* Doc. 6-1), which is permissible, but it means the burden of proof falls on the CFTC's shoulders: the "burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012).

## ARGUMENT

### I.   The CFTC lacks Article III standing.

A plaintiff has Article III standing when it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. An injury-in-fact requires that the plaintiff has suffered "'an

4

invasion of a legally protected interest' that is 'concrete and particularized.'" *Id.* at 339 (citation omitted). A "concrete" injury is "'real,' and not 'abstract.'" *Id.* at 340 (citation omitted). And a "particularized" injury "affect[s] the plaintiff in a personal and individual way." *Id.* at 339 (citation omitted). This latter requirement means that standing is "'substantially more difficult' to establish'" when the plaintiff is not "the object of the government action or inaction [it] challenges." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (citation omitted).

These core standing principles apply to the federal government too. *See United States v. Mattson,* 600 F.2d 1295, 1300 (9th Cir. 1979) ("[T]he government must show that, like the private individual, it has such an interest in the relief sought as entitles it to move in the matter." (quoting *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 285 (1888))); *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378–79 (2024) ("As this Court explained to President George Washington in 1793 in response to his request for a legal opinion, federal courts do not issue advisory opinions about the law—even when requested by the President.").

The CFTC lacks a "concrete and particularized" injury, and so it fails to satisfy the injury-in-fact requirement for Article III standing.

**A. The federal government can sometimes identify concrete harms to its operations that support standing to assert preemption claims.**

To be sure, the federal government sometimes has standing to assert preemption claims. But such standing requires that the preempted provision cause concrete harm to federal government operations in a way that isn't happening here. Such harm can result when the allegedly preempted provision directly regulates federal government operations, or alternatively when the provision regulates private activity on which federal government operations rely.

Two cases illustrate the first kind of injury: that which results from provisions that regulate federal government operations.

The first is *United States v. Supreme Court of New Mexico*, 839 F.3d 888 (10th Cir. 2016). Here, too, the United States filed a preemption claim, this time against a state rule of professional conduct that limited how federal prosecutors could subpoena defense lawyers. The United States had standing because evidence showed that this rule had "deterred federal prosecutors from issuing otherwise-permissible attorney subpoenas, thereby limiting the presentation of relevant evidence in grand-jury and other criminal proceedings." *Id.* at 899–900. In other words, the allegedly preempted state law directly affected federal officials by regulating them.

And the second is *United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2010). There, municipalities tried to ban federal government agents from recruiting minors for the military. Because the federal government was "the sole target" of the allegedly-preempted provisions, it suffered an injury-in-fact that supported standing. *Id.* at 989–90. *See also Yurok Tribe v. U.S. Bureau of Reclamation*, 593 F. Supp. 3d 916, 925 (N.D. Cal. 2022) (federal government had standing where it was "the direct object" of state enforcement action that rested on allegedly preempted provision).

The second category of injury—that which results from provisions that regulate private activity on which federal government operations rely—is illustrated by another pair of cases.

In one, *Geo Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022), the United States brought a preemption claim against a California law barring private detention facilities in the state. Because the federal government "relie[d] almost exclusively on privately operated detention facilities in the state," the state law would have "require[d] ICE to entirely transform its approach to detention in the state or else abandon its California facilities." *Id.* at 750. The challenged law therefore threatened "profound disruptions" to ICE operations, a harm that supported standing for the preemption claim. *Id.* at 753–54.

And in the other, *United States v. King County,* 122 F.4th 740 (9th Cir. 2024), the United States challenged a local order barring an airfield from servicing ICE flights. Like in *Geo Group*, the federal government had standing to assert this preemption claim because the order had "prevented ICE from accessing . . . services" at the airfield. *Id.* at 750. The inability to access these "essential" services would have "increased ICE's operational costs." *Id.* That represented a "particularized, individual" injury to the United States. *Id.*

In short, the federal government suffers an injury-in-fact that can support a preemption claim in two circumstances: when the targeted provision (1) directly regulates federal operations; or (2) regulates private activity on which federal operations rely.

### B. The CFTC has identified no concrete and particularized harm that it suffers from Wisconsin's gambling ban.

The CFTC identifies neither of these kinds of injuries here, and so it lacks a concrete and particularized injury that supports standing.

First, Wisconsin's gambling laws do not directly regulate the federal government, unlike the challenged recruitment ban directed at federal agents in *City of Arcata* or the rule of professional conduct directed at federal attorneys in *Supreme Court of New Mexico*. Precisely because these gambling laws instead regulate private parties like Kalshi, the federal government is not "the object of the government action or inaction [it] challenges" and so standing

is "'substantially more difficult' to establish.'" *Lujan*, 504 U.S. at 562 (citation omitted).

Second, the CFTC hasn't identified any regulated private activity on which it relies for its operations, unlike the private detention centers on which ICE relied in *Geo Group* or the airfield on which ICE relied in *King County*. Simply put, the CFTC doesn't *use* prediction markets to do its job (hopefully), its job is to *regulate* them. And so if Wisconsin shuts down sports gambling through those prediction markets, the CFTC's operations will be unaffected. That distinguishes this case from *Geo Group* and *King County*, where ICE *used* the private resources that a state and a locality sought to regulate. State interference with this kind of *use* is what injured the federal government in those cases, not supposed interference with an abstract regulatory power like the CFTC's here.

The Ninth Circuit recently bolstered this analysis by indicating that other States' gambling claims against prediction markets don't directly impact the CFTC. Kalshi tried to remove two such cases to federal court, partly based on the supposed impact those claims had on the CFTC. The Ninth Circuit rejected both efforts. In one, the Ninth Circuit found that the CFTC wasn't a necessary party partly because "it does not seem like [the State of] Washington 'is directly attempting to interfere with Defendant's CFTC dealings.'" *State of Washington v. KalshiEx LLC*, No. 26-3106, Doc. 19.1 at 2 (9th Cir., May 21,

9

2026). And in the other, this one involving the State of Nevada, the Ninth Circuit observed that the CFTC wasn't a necessary party because "[t]he CFTC does not have . . . a legal interest in the action." *State of Nevada v. KalshiEx LLC*, No. 26-1304, Doc. 20.1 at 2 (9th Cir., May 21, 2026). Both these decisions underscore that the CFTC is a bystander to these state enforcement actions, not a necessary player due to harms it supposedly suffers.

The closest the CFTC comes to identifying a concrete and particularized harm is its vague assertion that Wisconsin's gambling enforcement efforts are "mak[ing] the agency's task of uniformly regulating [companies like Kalshi] much more difficult." (Doc. 6:18.) That is an odd claim, given how sports-related prediction markets are unlawful nationwide under the CFTC's own regulations. *See* 17 C.F.R. § 40.11(a)(1) (prohibiting contracts "that involve[ ], relate[ ] to, or reference[ ] . . . gaming, or an activity that is unlawful under any State or Federal law); 18 U.S.C. § 1084(a) (criminalizing "the transmission in interstate . . . commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest"). There should be no sports-related gambling on these prediction markets at all, even under federal law, and so any complications the CFTC might be facing are problems of its own creation—not "injuries" caused by state enforcement.

In any event, the scant detail the CFTC provides doesn't establish a concrete and particularized injury. In essence, the CFTC says it is doing its

ordinary job of responding to questions from its regulated parties—and an agency doing its job cannot count as an injury. Specifically, the CFTC's declarant says that CFTC staff have "received requests for guidance" from regulated entities after "recent court decisions" regarding "appropriate steps to comply" with both federal and state law. (Doc. 6-1:4.) This has supposedly "diverted" an unspecified quantity of resources "from core functions" of the agency. (Doc. 6-1:4.) Perhaps the federal government doesn't always need to show a "profound disruption" to its operations like it did in *Geo Group*, 50 F.4th at 753, but if the CFTC's spare allegations here suffice, satisfying the injury-in-fact requirement would be a trivial exercise for federal regulators. At the very least, the CFTC identifies no authority that sets the injury-in-fact bar this low.

### C. The CFTC's purported "sovereign injury" alone does not yield a concrete and particularized injury that supports Article III standing.

Rather than identify a concrete and particularized injury to its operations, the CFTC relies mostly on two supposed types of "sovereign injuries." (Doc. 6:17–18.) Neither one supports standing either.

### 1. Wisconsin has not violated any federal laws.

First, the CFTC points to an "injury to [U.S.] sovereignty arising from violation of its laws." (Doc. 6:17 (citation omitted).) But the CFTC cites only one case in which this kind of sovereign harm alone supported federal

11

government standing: a civil enforcement action brought by the SEC against private individuals for violating the Securities Exchange Act. *See S.E.C. v. Gaspar*, No. 83 Civ. 3037, 1985 WL 521, at \*16 (S.D.N.Y. Apr. 16, 1985); *see also Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (noting that United States is injured by violations of the False Claims Act).

The CFTC cites its power to "bring civil suits to enforce its authority" under the Commodities Exchange Act (Doc. 6:17), but the CFTC isn't suing Wisconsin for allegedly violating that federal statute like the SEC was doing in *Gaspar*.[1] Rather, the CFTC filed a preemption claim, and it cites no cases holding that preemption counts as a "violation of [the United States'] laws" that creates this kind of sovereign injury. *Vermont Agency of Nat. Res.*, 529 U.S. at 771. Indeed, preemption provisions do not "operate directly on the States," *Murphy v. National Collegiate Athletic Ass'n*, 584 U.S. 453, 478 (2018), and so States cannot "violate" them in the way private individuals can violate federal statutes.

---

[1] The CFTC does accuse Wisconsin of "directly violat[ing] the CFTC's regulation requiring 'impartial access' to all eligible participants nationwide," 17 C.F.R. § 38.151(b). (Doc. 6:18.) But the CFTC did not bring such a claim against the State, which would make little sense anyway for two reasons. First, this provision regulates entities like Kalshi, not States. Second, under 17 C.F.R. § 40.11(a)(1) and 18 U.S.C. § 1084(a) (among other federal laws), the uniform 50-state rule already forbids prediction markets from offering sports-related event contracts.

The other two cases the CFTC cites here don't even fall in the abstract "sovereign injury" category—rather, they involved the kind of concrete harms to federal operations addressed above. (Doc. 6:17.) In *United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir. 1984), IRS employees were being harassed with common-law liens, which "threatened interference with the performance of . . . proper governmental functions." Likewise, in *United States v. Missouri*, 114 F.4th 980, 984 (8th Cir. 2024), a state law allegedly "impeded the federal government's ability to enforce federal law by causing state officials to withdraw from joint task forces with federal law enforcement [and] by disrupting information sharing between state and federal officers." That concrete interference with federal operations generated standing, not an abstract sovereign injury. Again, the CFTC has identified no such interference here.

### 2. Preemption claims alone do not generate an injury-in-fact.

That leaves the CFTC's fallback position: that "[t]he United States suffers injury when its valid laws in a domain of federal authority are undermined by impermissible state regulations." (Doc. 6:18.) In other words, the CFTC says it always suffers an injury-in-fact from the mere existence of an allegedly preempted state law. But the CFTC doesn't cite a single case holding that this purported "injury" supported Article III standing.

In fact, none of the cases it cites here addressed standing at all. Two of them, *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) and *United States v. South Carolina*, 720 F.3d 518, 528 (4th Cir. 2013), merely mentioned an "injury" in a single terse sentence (without any citations) when balancing the equities for purposes of a preliminary injunction. Likewise, *Arizona v. United States*, 567 U.S. 387, 394 (2012), never even mentioned an injury (let alone standing). These may well be cases "in which jurisdiction [was] assumed *sub silentio*," but for that reason they "are not binding authority for the proposition that jurisdiction exist[ed]." *In re Navy Chaplaincy*, 534 F.3d 756, 764 (D.C. Cir. 2008) (citation omitted); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("[D]rive-by jurisdictional rulings . . . have no precedential effect."). Moreover, these cases all involved preemption challenges to state immigration provisions; in the immigration context, it is not hard to imagine potential impacts of state provisions on federal immigration operations. But the CFTC has developed no theory for why state enforcement against illegal sports betting operations (that are also illegal under federal law) might interfere with federal operations in a similar way.

In fact, at least two district courts have recently held that garden-variety preemption claims don't automatically generate an Article III injury-in-fact to the federal government.

In *United States v. Hawaii*, No. 25-CV-00179, 2026 WL 1021227 (D. Haw. Apr. 15, 2026), the United States sued to stop state enforcement actions against fossil fuel companies, arguing that federal law preempted the underlying state tort law. Like here, the federal government's standing theory was that its "'sovereignty' [would] be injured" if the State of Hawaii "sue[d] third parties in state court" using allegedly preempted state law. The court held that these "conclusory allegations" failed to describe a "concrete injury" that supported standing. *Id.*

Likewise, in *United States v. California*, No. 2:25-CV-06230, 2026 WL 784514, at *1 (C.D. Cal. Mar. 18, 2026), the United States sued to block enforcement of state laws regulating egg-producing conditions. Again, to support standing, the federal government pointed to a supposed "injury to its sovereignty." *Id.* at *3. The court rejected this argument, finding "no binding authority holding that the mere *existence* of a preempted state law creates a sovereign injury to the federal government." *Id.* Instead, the court agreed with the principle explored above: that an injury-in-fact requires specific state action "impeding the operations or functions of the federal government." *Id.* Again, that is exactly what is missing here.

\* \* \*

The CFTC has not identified any injury-in-fact caused by Wisconsin's enforcement of state gambling law against prediction market operators. The

15

CFTC has identified no concrete harm to its own operations, and its purported sovereign injury is too abstract to support standing either.

## II. Certain defendants should be dismissed because they are not charged with enforcing the challenged statute.

Three defendants that the CFTC has sued should be dismissed from this case anyway because they are not charged with enforcing the gambling laws at issue: Governor Evers; the Wisconsin Department of Administration's Division of Gaming; and the Division of Gaming's administrator, John Dillett.

Among other things, Article III standing requires that an asserted injury be "fairly traceable" to a defendant and, correspondingly, that the defendant can "redress[ ]" the injury. *Spokeo*, 578 U.S. at 338. Those basic principles produce "a long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001); *Options For Cmty. Growth, Inc. v. Wis. Dep't of Health & Fam. Servs.*, No. 03-CV-1275, 2006 WL 2645185, at *3 (E.D. Wis. Sept. 14, 2006) (applying *Okpalobi* to dismiss claim against state agency with "no connection" to asserted injuries).[2]

---

[2] *See also Duit Const. Co. Inc. v. Bennett*, 796 F.3d 938, 941 (8th Cir. 2015) (no redressability where official capacity defendants "have no control over" challenged government practices); *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1299 (11th Cir. 2019) (injury not traceable to government official where challenged statute did not "contemplate enforcement" by that official); *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 902 (4th Cir. 2022) ("When a defendant has no role in

None of the statutes at issue here are enforceable by the Governor, the Division of Gaming, or Administrator Dillett. The two relevant statutes are Wis. Stat. § 823.02 (which provides a cause of action for public nuisances) and Wis. Stat. § 945.03(1m) (which is the underlying criminal gambling prohibition).

First, the public nuisance law "may be commenced and prosecuted in the name of the state, either by the attorney general on information obtained by the department of justice, or upon the relation of a private individual, sewerage commission created under ss. 200.01 to 200.15 or a county, having first obtained leave therefor from the court." Wis. Stat. § 823.02. The State and the Attorney General have public nuisance enforcement power, not the other Defendants.

Second, Wisconsin's district attorneys have primary authority to enforce state criminal laws, including the gambling laws at issue here. Wisconsin Stat. § 978.05(1) assigns to district attorneys the power to "prosecute all criminal actions before any court within his or her prosecutorial unit." *See also* Wis. Stat. § 968.02(1) ("[A] complaint charging a person with an offense shall be issued only by a district attorney of the county where the crime is alleged to have been committed"). The Attorney General also has prosecutorial authority

---

enforcing the law at issue, it follows that the plaintiff's injury allegedly caused by that law is not traceable to the defendant.").

in certain areas defined by statute, including most of the gambling laws in chapter 945. *See* Wis. Stat. § 165.70(1)(b). The other Defendants, by contrast, have no such enforcement power.

The CFTC's complaint never alleges that the Governor, the Division of Gaming, or Administrator Dillett played an official role here. They are all mentioned solely in the party section of the complaint. (Doc. 1:5–6.) As for the Governor, the complaint cites only the Wisconsin constitution's "take care" clause (Doc. 1:5 (citing Wis. Const. art. V, § 4)), but that provision doesn't grant the Governor the authority to enforce the State's criminal laws. Again, that is the job of district attorneys (and sometimes the Attorney General), who are independently elected "constitutional officers" in Wisconsin. *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶ 28, 271 Wis. 2d 633, 681 N.W.2d 110; *see also* Wis. Const. art. VI, § 4(1)(a). As for the Division of Gaming and its administrator, the complaint references the Division's regulatory powers over licensed gaming in Wisconsin, but this case doesn't involve licensed gaming— it involves unlicensed, illegal gambling under the State's criminal law.

Because the Governor, the Division of Gaming, and Administrator Dillett all lack "any power to enforce the complained-of statute[s]," they should be dismissed from this case. *Okpalobi*, 244 F.3d at 426.

## CONCLUSION

Because the CFTC lacks Article III standing, the Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Alternatively, if the entire case isn't dismissed, at least the Governor, the Division of Gaming, and Administrator Dillett should be dismissed, also for lack of standing.

Dated this 29th day of May 2026.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Colin T. Roth
COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-7636
(608) 294-2907 (Fax)
colin.roth@wisdoj.gov

# CERTIFICATE OF SERVICE

I certify that in compliance with Wis. Stat. § 801.18(6), I electronically filed the above Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Memorandum of law in Support with the clerk of court using the Eastern District of Wisconsin Electronic Filing System, which will accomplish electronic notice and service for all participants who are registered users.

Dated this 29th day of May 2026.

s/ Colin T. Roth
COLIN T. ROTH
Assistant Attorney General
