## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THE UNITED STATES OF AMERICA AND COMMODITY FUTURES TRADING COMMISSION,<br><br>       Plaintiffs,<br><br>    v.<br><br>STATE OF WISCONSIN; ANTHONY S. EVERS, in his official capacity as Governor of WISCONSIN; JOSHUA L. KAUL, in his official capacity as Attorney General of WISCONSIN; STATE OF WISCONSIN DEPARTMENT OF ADMINISTRATION DIVISION OF GAMING; JOHN DILLETT, in his official capacity as Administrator of the Wisconsin Department of Administration Division of Gaming,<br><br>       Defendants. | Civil Action No.: 2:26-cv-749 |

## REPLY MEMORANDUM IN SUPPORT OF
## MOTION TO INTERVENE BY NORTH AMERICAN DERIVATIVES
## EXCHANGE, INC., D/B/A CRYPTO.COM | DERIVATIVES NORTH AMERICA

North American Derivatives Exchange, Inc., d/b/a Crypto.com | Derivatives North America ("CDNA") respectfully submits this reply memorandum in further support of its Motion to Intervene (Dkt. No. 13) (the "Motion" or "Mot.") and in response to Defendants' Combined Opposition (Dkt. No. 28) (the "Opposition" or "Opp.").[1]

**PRELIMINARY STATEMENT**

Wisconsin concedes the central points that matter for purposes of CDNA's Motion to Intervene: that the Motion is timely and that CDNA has a legally protectable interest in this Action. *See* Opp. at 5. These concessions illustrate that this is not merely an abstract dispute about federal regulatory power. Wisconsin has targeted CDNA directly, accusing it of ongoing criminal violations for listing event contracts on a federally regulated DCM, and the CFTC's claims seek to enjoin Wisconsin's actions against CDNA specifically.

Wisconsin's concessions leave the State to argue that CDNA's interest somehow will not be impaired if CDNA is excluded from participating in this case, and that the CFTC can adequately represent CDNA's interests. Neither is correct. CDNA is specifically named in the complaint in this case. The outcome of this case bears directly on whether aspects of CDNA's business will be permitted to continue in this State. Few have a greater interest in the outcome than does CDNA. If CDNA is excluded from litigating its own interests, then it will have no ability to shape the arguments, factual record, or relief in litigation over its own federally regulated conduct. Nor can CDNA's interests be reduced to the CFTC's institutional interest in vindicating federal regulatory authority. CDNA seeks to protect its business, its compliance investments, its reputation, and its ability to continue offering Sports Event Contracts without being subjected to improper state

---

[1]     Capitalized terms not otherwise defined herein have the same meaning as in the Motion.

2

enforcement.  The CFTC has no obligation to protect those commercial and operational interests, and indeed takes no position on CDNA's Motion.  *See* Mot. at 9.

Wisconsin's remaining arguments do not withstand scrutiny.  The existence of the Wisconsin Enforcement Action does not eliminate impairment; it confirms that this Action concerns CDNA's own regulated conduct.  Nor would permitting CDNA to intervene open any floodgates—CDNA is not just *any* regulated party, but a direct enforcement target that the CFTC is specifically seeking to protect through this Action.  The Court should grant CDNA's motion.

**ARGUMENT**

**I.**      **CDNA May Intervene As of Right Under Rule 24(a)(2)**

     **A.  Wisconsin Concedes CDNA Has a Legally Protectable Interest in This Action.**

At the outset, Defendants concede that CDNA's motion is timely and that CDNA "likely has an interest in how this litigation is resolved."  Opp. at 5.  This is not a surprising concession, but it is an important one.  Wisconsin has taken enforcement action against CDNA specifically, alleging that CDNA's listing of Sports Event Contracts violates Wisconsin's criminal prohibition on "commercial gambling" and constitutes an abatable public nuisance.  *See* Wis. Compl. ¶¶ 54–67.  The CFTC's Complaint likewise identifies CDNA as a "relevant entity," identifies Wisconsin's enforcement action against CDNA as part of the enforcement campaign the CFTC seeks to halt, and seeks declaratory and injunctive relief directed to that same state-law enforcement activity.  *See* CFTC Compl. ¶¶ 1–5, 26, 65, 67, 71–93.

Defendants' concessions largely resolve the threshold inquiry.  Having acknowledged CDNA's timely and legally protectable interest, Defendants are left to argue only that CDNA's interest will not be impaired absent intervention, or that the CFTC can adequately represent CDNA's interests.  Neither argument follows.  This is litigation brought by a federal agency in response to Wisconsin's enforcement action against identified CFTC-regulated DCMs, including

3

CDNA. When a party challenges the rights or obligations of a self-regulatory organization, it is common practice for the affected SRO to intervene given its operational stake in the outcome. *See, e.g.*, *Chi. Bd. Options Exch., Inc. v. S.E.C.*, 889 F.3d 837, 839–40 (7th Cir. 2018) (NASDAQ intervened in appeal from SEC order); *NetCoalition v. S.E.C.*, 715 F.3d 342, 345 (D.C. Cir. 2013) (national securities exchanges intervened in action regarding proposed changes to fee-setting rules); *Mayo v. Dean Witter Reynolds*, 258 F. Supp. 2d 1097, 1102 n.4 (N.D. Cal. 2003) (granting motions to intervene by SROs where state-imposed obligations conflicted with SEC-approved rules). The same principle applies here: the CFTC and Wisconsin are litigating over the regulatory treatment of CDNA's federally authorized trading activity, and CDNA has a direct interest in the outcome.

**B. Excluding CDNA From Litigation Over Its Own Interests Would Necessarily Impair Those Interests.**

CDNA is obviously impaired if it is excluded from litigation over its own legally protectable interests. Defendants' primary argument—that CDNA can raise arguments in the Wisconsin Enforcement Action—does not answer whether CDNA is impaired if *this* Action proceeds without it. It plainly would. This Court will likely decide questions at the center of the Wisconsin Enforcement Action, including the scope of the CEA's exclusive jurisdiction, whether event contracts traded on CFTC-regulated DCMs are subject to that jurisdiction, and whether Wisconsin's enforcement action creates competing obligations that support conflict preemption. CDNA will advance its own commercial and operational perspective on these issues—including how Wisconsin's theory would affect CDNA's market operations, compliance program, and ability to list derivative products—that the CFTC, as a sovereign litigant, cannot and will not provide. If CDNA is excluded, it cannot shape the arguments or factual record on questions that directly affect its business and legal exposure.

The Wisconsin Enforcement Action is no answer. That case is a state enforcement action filed against CDNA—not a substitute for CDNA's participation in this federal action brought to enjoin Wisconsin's broader enforcement campaign. This Action will proceed independently, and rulings here may affect CDNA regardless of what happens in the Wisconsin Enforcement Action. CDNA cannot protect its interests in this Action if it is not allowed to participate.

Defendants' assertion that state courts "will not be bound by any decision in this federal case," Opp. at 6, is misleading. For one, if Defendants are enjoined from pursuing the Wisconsin Enforcement Action, then that case will presumably not go forward at all. And even if it does, the State—which is a party to both cases—will presumably be precluded from serially litigating issues that are actually decided here. *See Moore v. Labor and Industry Review Comm'n*, 499 N.W.2d 288, 290–91 (Wis. Ct. App. 1993) (applying collateral estoppel to prevent plaintiff from relitigating in state court an issue that was determined in prior federal court); *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 n.7 (7th Cir. 1995) ("We note that our recent cases have articulated a blanket rule that whenever the first judgment is a federal judgment, federal rules of preclusion must apply."). Defendants also assume the Wisconsin Enforcement Action will be remanded to state court, ignoring that any appellate decision in this case by the Seventh Circuit would bind the Western District of Wisconsin in any parallel federal proceeding. In addition, the order of a federal court on a federal issue like preemption carries significant persuasive weight, even if not formally binding on a state forum. *See Smith v. Pangilinan*, 651 F.2d 1320, 1325 (9th Cir. 1981) (recognizing that the resolution of a federal preemption issue in one forum may practically doom the proposed intervenor's parallel claims where [the intervenor] "will have had no voice in the case in which the decision is made"). The Supreme Court has confirmed that a party who fails to intervene may be foreclosed from later challenging orders

5

issued in that proceeding.  *See NRC v. Texas*, 605 U.S. 665 (2025).  CDNA's inability to participate in this Action therefore creates a real and substantial risk of practical impairment of its interests.

The relief available in the two cases is also not identical.  A successful result in the Wisconsin Enforcement Action would resolve only that pending action as to CDNA's Sports Event Contracts.  *See* Wis. Compl. ¶¶ 54–67.  This case is much broader: it concerns the scope of Wisconsin's authority to enforce preempted state laws against trading on federally regulated DCMs.  *See* CFTC Compl. ¶¶ 1–5, 44–47, 71–93.  That broader relief serves CDNA's interest in the regulatory uniformity Congress intended when it enacted the CEA.  7 U.S.C. § 2(a)(1)(A).  The need for uniformity is particularly urgent given that federal courts have reached conflicting results on the preemption question.  *Compare KalshiEX LLC v. Flaherty*, 172 F.4th 220, 226–27 (3d Cir. 2026) (holding CEA preempts state gaming laws as applied to event contracts on DCMs), *with KalshiEX, LLC v. Hendrick*, 817 F. Supp. 3d 1014, 1036–37 (D. Nev. 2025) (reaching contrary conclusion).  Wisconsin cannot defeat intervention by pointing to another case while this Action will adjudicate issues directly affecting CDNA's conceded interests.

Finally, Defendants' attempts to distinguish CDNA's intervention in the District of Arizona fail.  *See* Opp. at 6–7.  That intervention was unopposed, but the court independently analyzed the Rule 24(a) factors before granting it.  Defendants further argue that the Arizona case involved a different DCM operator suing a state rather than the CFTC.  *See* Opp. at 7.  But that distinction strengthens CDNA's position: if CDNA's interest warranted intervention in a case brought by another private party, it is at least as strong in a case brought by the federal regulator whose exclusive jurisdiction is the foundation of CDNA's right to operate.  Moreover, after CDNA intervened, the Arizona court granted a preliminary injunction holding that "the CEA's granting of exclusive jurisdiction to the CFTC over swaps preempts state enforcement against event

6

contracts." Order at 6, 17, *KalshiEX v. Johnson et al.*, 2:26-cv-01715 (D. Ariz. May 5, 2026), Dkt. No. 96. That result—reached with CDNA's active participation—confirms that CDNA's involvement in this type of case is appropriate and not merely duplicative of the CFTC's efforts.

### C. The CFTC Does Not Adequately Represent CDNA's Interests.

Defendants apparently concede that the United States does not adequately represent CDNA's interests. Their argument that the CFTC adequately represents CDNA because both seek to establish federal preemption, *see* Opp. at 7–12, is wrong. The CFTC is a federal regulator pursuing sovereign and institutional interests; CDNA is a regulated business whose operations, compliance program, reputation, and exposure to state enforcement are directly at stake. That distinction defeats Defendants' adequacy argument at every tier of the Seventh Circuit's analysis.

No presumption of adequacy applies in this case. Defendants assert that the "strongest version" of the adequacy presumption applies because of "the CFTC's status and the nature of this case." Opp. at 8. But the highest tier is reserved for circumstances where a governmental party is "legally required to represent the absentee's interests." *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 747 (7th Cir. 2020). The CFTC has no such legal obligation to CDNA. It filed this case to vindicate its own regulatory jurisdiction—not on CDNA's behalf and without owing CDNA any duty of representation. The CFTC does not take direction from CDNA. It has no obligation to avoid taking positions that are contrary to CDNA's interests. Indeed, the CFTC takes no position on CDNA's motion to intervene, which is evidence that it does not view itself as CDNA's representative. *See* Mot. at 9.

Defendants try to distinguish *Driftless* by framing this as a pure preemption case where the CFTC's interests perfectly overlap with CDNA's. *See* Opp. at 9–10. But that is precisely the situation *Driftless* addressed. In *Driftless*, a regulator was defending a regulatory decision it had

made, just as the CFTC here is defending the regulatory framework it administers. The Seventh Circuit held that the regulator did not adequately represent the regulated party's distinct economic and business interests. *Driftless*, 969 F.3d at 748–49 ("[T]he [state] Commission *regulates* the transmission companies, it does not advocate for them or represent their interests. The transmission companies cannot be forced to rely entirely on *their regulators* to protect their investment.") (emphasis in original). Defendants contend that *Driftless* is distinguishable because that case involved a challenge to a specific permit, whereas the CFTC here is "seeking to use preemption to shield its regulated parties from state enforcement." Opp. at 10. But that distinction cuts in CDNA's favor: if a regulated party may intervene when its regulator merely issued a permit, then it may intervene when the regulator is defending the very legal framework on which the regulated party's entire business depends. The CFTC's decision to bring this suit does not transform it into CDNA's advocate. Instead, the CFTC remains CDNA's regulator, pursuing its own institutional interests.

Defendants invoke the middle tier of the Seventh Circuit's framework, which requires a showing of "some conflict" when the parties share "the same goal." Opp. at 8, 10–11 (citing *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019)). CDNA has made that showing. CDNA's Motion identified concrete areas where the CFTC cannot speak for CDNA: (i) CDNA is uniquely positioned to demonstrate the robustness of its compliance and supervisory programs, which the CFTC regulates and therefore cannot champion; (ii) CDNA faces direct business harm and the threat of criminal prosecution that the CFTC does not share; and (iii) Wisconsin's enforcement theory creates uncertainty about CDNA's ability to offer Sports Event Contracts in Wisconsin, implicating business interests the CFTC has no obligation to protect. *See*

Mot. at 15. These constitute precisely the kind of "conflict" that rebuts the presumption of adequacy.

Defendants also invoke *Bost v. Illinois State Board of Elections*, 75 F.4th 682 (7th Cir. 2023) to argue that CDNA cannot rely on the comparison of interests alone to establish inadequacy. *See* Opp. at 11. But *Bost* is inapposite. In *Bost*, the proposed intervenor identified no concrete divergence from the existing party's litigation strategy: despite identifying distinct harms, the proposed intervenor offered no unique evidentiary contribution, and no different theory of the case. Here, by contrast, CDNA has identified specific, particularized interests and harms that the CFTC does not share and cannot advance: the threat of criminal prosecution, the chilling effect on CDNA's business operations, the reputational harm of being branded a lawbreaker, and the need to demonstrate the adequacy of its compliance programs. CDNA is not merely pointing to a theoretical divergence in interests; it has identified concrete, case-specific reasons why the CFTC's representation will fall short.

Defendants argue that the CFTC is effectively protecting CDNA by opposing Wisconsin's enforcement efforts. *See* Opp. at 9–10. But the fact that the CFTC's action may incidentally benefit CDNA does not mean the CFTC is acting on CDNA's behalf. Indeed, Kalshi—another DCM targeted by Wisconsin—has separately moved to intervene in this Action. *See* Dkt. No. 24. That two of the CFTC's own regulated entities have independently determined that the CFTC cannot speak for them strongly suggests that the CFTC's representation is inadequate.

Defendants' "floodgates" argument is a red herring. They contend that permitting CDNA's intervention would mean "every single regulated party would have a right to intervene in every single preemption case brought by a federal regulator." Opp. at 11–12. But Defendants cite no case law supporting this claim, and Rule 24 requires an individualized inquiry, not categorical

prohibitions.  CDNA is named as a "relevant entity" in the Complaint, CFTC Compl. ¶ 26; it is a direct enforcement target of the conduct the CFTC seeks to enjoin, *id.* ¶¶ 2, 65, 67; and it has successfully intervened in parallel actions in Arizona and Connecticut.  Defendants' invocation of *Arizona v. United States*, 567 U.S. 387 (2012), is inapposite—in that immigration preemption case, no proposed intervenor was identified in the complaint as a target of the challenged enforcement activity.

### D.  CDNA Is Not "Claim-Splitting."

Defendants' final argument is that CDNA's proposed complaint in intervention constitutes impermissible claim-splitting because CDNA is also defending against the Wisconsin Enforcement Action.  *See* Opp. at 12–13.  This argument also fails for multiple reasons.

*First*, CDNA is not asserting any "claim" in the Wisconsin Enforcement Action.  It is a defendant in claims improperly brought by the State.

*Second*, Defendants cite no Seventh Circuit authority applying claim-splitting as a bar to intervention under Rule 24.  Nor could they—as Defendants concede, *see* Opp. at 13, the doctrine targets *plaintiffs* who affirmatively bring duplicative suits, not parties seeking to participate in existing litigation.  *See Scholz v. United States*, 18 F.4th 941, 951 (7th Cir. 2021).  CDNA did not initiate either case—it seeks only to participate in a case that directly implicates its interests.  *See Meltinos v. Botts*, 2017 WL 465674, at *2–3 n.2 (N.D. Ind. Feb. 3, 2017) (granting intervention and rejecting claim-splitting argument because the party was "seeking to intervene in Plaintiffs' suit, not file a separate action").  Defendants' sole authority for applying claim-splitting in the intervention context—*Fresh Venture Foods*, 2022 WL 3137722 (C.D. Cal. May 24, 2022)—is an unpublished, out-of-circuit decision that Defendants do not discuss beyond a parenthetical.

10

*Third*, even if the doctrine could theoretically apply, the elements of claim-splitting are not met. Claim-splitting requires "identity of the parties and of the causes of action between the two lawsuits." *Scholz*, 18 F.4th at 952. Neither element is satisfied. The parties differ: the CFTC is plaintiff here; Wisconsin is plaintiff in the enforcement action. The posture differs: CDNA seeks affirmative declaratory relief here but defends against enforcement claims there. And the scope differs: this Action challenges Wisconsin's regulatory overreach as applied to all DCMs, whereas the enforcement action concerns CDNA's specific conduct with respect to Sports Event Contracts. Defendants cite *Evanston Insurance Co. v. Nooter, LLC*, 129 F.4th 494 (8th Cir. 2025), but *Evanston* involved the same party bringing a new declaratory judgment action in a separate court—*i.e.*, acting as a plaintiff in federal court to evade obligations imposed on it in state court. *Id.* at 497. CDNA, by contrast, is intervening in a case the CFTC initiated and that already names CDNA as a relevant entity. Indeed, Wisconsin itself has conceded that this Action "arises from" the Wisconsin Enforcement Action and raises "virtually identical" preemption issues. *See* Dkt. No. 9 at 2, 11. That concession defeats the claim-splitting argument: CDNA seeks to intervene precisely because its claims share common questions of law and fact with this Action.

## II. Permissive Intervention Should Be Granted in the Alternative.

Even if the Court concludes that CDNA does not satisfy the requirements for intervention as of right—and CDNA submits that it does—CDNA alternatively satisfies the requirements for permissive intervention under Rule 24(b)(1)(B). Permissive intervention has a lower threshold and serves distinct purposes from intervention as of right. Under Rule 24(b)(1)(B), the Court may permit intervention by "anyone" who "timely" moves and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see Flying J, Inc.*

*v. Van Hollen*, 578 F.3d 569, 573 (7th Cir. 2009) (granting permissive intervention where intervenor "wants to present the same defense that the defendants presented").

There is no dispute that CDNA's proposed claims share common questions of law with this Action, including whether the CEA preempts Wisconsin's gambling laws as applied to Sports Event Contracts traded on DCMs, and Defendants do not argue otherwise. The remaining question is whether the Court should exercise its discretion in favor of intervention.

CDNA's participation would promote judicial efficiency, avoid inconsistent outcomes, and bring a unique perspective that the CFTC cannot provide. Wisconsin itself has acknowledged that this case and the enforcement actions raise "virtually identical" legal issues and that resolving them in different forums risks inconsistent rulings. *See* Dkt. No. 9 at 11. That is a strong rationale for permitting CDNA, a direct enforcement target facing the threat of criminal prosecution, to participate here rather than have the preemption question resolved without its input. CDNA can offer the Court factual context and substantive expertise about the practical impact of Wisconsin's regulatory overreach on federally regulated markets that the CFTC, as an institutional litigant, cannot. *See Trump v. Wis. Elections Comm'n*, 2020 WL 7230960, at *3 (E.D. Wis. Dec. 8, 2020) (permitting intervention when proposed intervenors "can contribute key perspectives and complete the development of issues before the Court"); *Brumback v. Ferguson*, 343 F.R.D. 335, 346 (E.D. Wash. 2022) (intervention appropriate where intervenor offers expertise "likely to be useful" to the court).

Because the case is still in its earliest stages, CDNA's intervention would cause no undue delay or prejudice. Defendants have not yet answered the Complaint, and the Court has not scheduled any deadlines. CDNA does not seek relief different in kind from the CFTC; it seeks the same declaratory and injunctive protection against state overreach. There is also an independent

basis for jurisdiction, as CDNA's proposed complaint in intervention raises the federal question of preemption under the CEA. *See* 28 U.S.C. § 1331. Defendants' arguments against permissive intervention—claim-splitting and the "floodgates" concern, *see* Opp. at 14–15—fail for the same reasons discussed above.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant CDNA's motion to intervene as of right pursuant to Rule 24(a)(2), or in the alternative, in the Court's discretion, grant CDNA permissive intervention pursuant to Rule 24(b)(1)(B).

*[Signature Page Follows]*

Dated: June 12, 2026

*/s/ Harper F. Beck__*

Eric G. Pearson (Wis. Bar No. 1064367)
Harper F. Beck (Wis. Bar No. 1115774)
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone: 414-319-7360
Facsimile: 414-297-4900
epearson@foley.com
harper.beck@foley.com

Nowell D. Bamberger (*pro hac vice* forthcoming)
Matthew C. Solomon (*pro hac vice* forthcoming)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Ave. NW
Washington, DC 20037
Telephone: 202-974-1500
nbamberger@cgsh.com
msolomon@cgsh.com

David Meister (*pro hac vice* forthcoming)
Robert A. Fumerton (*pro hac vice* forthcoming)
Judith A. Flumenbaum (*pro hac vice* forthcoming)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (917) 777-2000
david.meister@skadden.com
robert.fumerton@skadden.com
judy.flumenbaum@skadden.com

Shay Dvoretzky (*pro hac vice* forthcoming)
Parker Rider-Longmaid (*pro hac vice* forthcoming)
Sylvia O. Tsakos (*pro hac vice* forthcoming)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue NW
Washington, DC 20005
Telephone: (202) 371-7000
shay.dvoretzky@skadden.com
parker.rider-longmaid@skadden.com
sylvia.tsakos@skadden.com

*Attorneys for North American Derivatives Exchange, Inc.,
d/b/a Crypto.com | Derivatives North America*

14