# United States District Court
## Eastern District of Wisconsin (Milwaukee)
## CIVIL DOCKET FOR CASE #: <u>2:26−cv−00749−WCG</u>

| | |
|---|---|
| United States of America et al v. State of Wisconsin et al | Date Filed: 04/28/2026 |
| Assigned to: Judge William C Griesbach | Jury Demand: None |
| Cause: 7:6(b) Federal Commodity Exchange Regulation | Nature of Suit: 950 Constitutional − State Statute |
| | Jurisdiction: U.S. Government Plaintiff |

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **United States of America** | represented by | **Brett A Shumate** |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Tiberius T Davis** |
| | | DOJ−Civ |
| | | Civil Division |
| | | 950 Pennsylvania Ave − Ste 400 |
| | | Washington, DC 20530−0001 |
| | | 202−890−9670 |
| | | Email: <u>tiberius.davis@usdoj.gov</u> |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Yaakov M Roth** |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Alexandra Schulte** |
| | | DOJ−Civ |
| | | Enforcement & Affirmative Litigation |
| | | PO Box 386 |
| | | Washington, DC 20044 |
| | | 202−718−0483 |
| | | Email: <u>alexandra.schulte@usdoj.gov</u> |
| | | *ATTORNEY TO BE NOTICED* |

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **Commodity Futures Trading Commission** | represented by | **Andrew Joseph Weisberg** |
| | | Commodity Futures Trading Commission |
| | | Office of the General Counsel |
| | | Three Lafayette Centre |
| | | 1155 21st St NW |
| | | Washington, DC 20581 |
| | | 202−418−5574 |
| | | Email: <u>aweisberg@cftc.gov</u> |
| | | *LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*

**Anne Whitford Stukes**
Commodity Futures Trading Commission
Office of the General Counsel
1155 21st St NW
Washington, DC 20581
202–418–5127
Fax: 202–418–5567
Email: astukes@cftc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carlin R Metzger**
U.S. Commodity Futures Trading
Commission
Ralph Metcalf Federal Office Building
77 W Jackson Blvd – Ste 800
Chicago, IL 60604
312–596–0536
Email: cmetzger@cftc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tyler Badgley**
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Henry Dickman**
Commodity Futures Trading Commission
1155 21st St NW
Washington, DC 20581
202–418–5607
Email: hdickman@cftc.gov
*ATTORNEY TO BE NOTICED*

**Margaret P Aisenbrey**
U.S. Commodity Futures Trading
Commission
Office of the General Counsel
2600 Grand Blvd – Ste 210
Kansas City, MO 64108
816–960–7749
Fax: 816–960–7750
Email: maisenbrey@cftc.gov
*ATTORNEY TO BE NOTICED*

**Martin Jordan Minot**
Commodity Futures Trading Commission
Office of the General Counsel
Three Lafayette Center
1155 21st St NW

Washington, DC 20581
202−209−1087
Email: jminot@cftc.gov
*ATTORNEY TO BE NOTICED*

**Alexandra Schulte**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **State of Wisconsin** | represented by | **Charlotte Gibson** |

Wisconsin Department of Justice
17 W Main St
PO Box 7857
Madison, WI 53707
608−957−5218
Email: gibsoncj@doj.state.wi.us
*ATTORNEY TO BE NOTICED*

**Colin T Roth**
Wisconsin Department of Justice
Office of the Attorney General
17 W Main St
PO Box 7857
Madison, WI 53707−7857
608−266−7636
Email: rothct1@doj.state.wi.us
*ATTORNEY TO BE NOTICED*

**Lewis W Beilin**
WIsconsin Department of Justice
17 W Main St
Post Office Box 7857
Madison, WI 53707−7857
608−266−3076
Email: beilinlw@doj.state.wi.us
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Joshua L Kaul** | represented by | **Charlotte Gibson** |

(See above for address)
*ATTORNEY TO BE NOTICED*

**Colin T Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis W Beilin**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Defendant**

**State of Wisconsin Department of Administration Division of Gaming**
*TERMINATED: 06/12/2026*

represented by **Charlotte Gibson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Colin T Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis W Beilin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**John Dillett**
*TERMINATED: 06/12/2026*

represented by **Charlotte Gibson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Colin T Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis W Beilin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anthony S Evers**
*TERMINATED: 06/12/2026*

represented by **Charlotte Gibson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Colin T Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis W Beilin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**North American Derivatives Exchange Inc**
*TERMINATED: 07/29/2026*
*doing business as*
Crypto.com Derivatives North America
*TERMINATED: 07/29/2026*

represented by **Eric G Pearson**
Foley & Lardner LLP
777 E Wisconsin Ave – Ste 3800
Milwaukee, WI 53202
414–319–7360
Fax: 414–297–4900
Email: epearson@foley.com
*ATTORNEY TO BE NOTICED*

**Harper F Beck**
Foley & Lardner LLP
777 E Wisconsin Ave – Ste 3800
Milwaukee, WI 53202
414–297–4982
Email: harper.beck@foley.com
*ATTORNEY TO BE NOTICED*

**Matthew C Solomon**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Ave NW – Ste 1000
Washington, DC 20037
202–974–1680
Email: msolomon@cgsh.com
*ATTORNEY TO BE NOTICED*

**Nowell D Bamberger**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Ave NW – Ste 1000
Washington, DC 20037
202–974–1752
Email: nbamberger@cgsh.com
*ATTORNEY TO BE NOTICED*

<u>**Movant**</u>

**KalshiEX LLC**                                    represented by **Sarah A Zylstra**
*TERMINATED: 07/29/2026*                                        Boardman & Clark LLP
1 S Pinckney St – 4th Fl
PO Box 927
Madison, WI 53701–0927
608–257–9521
Fax: 608–283–1709
Email: szylstra@boardmanlawfirm.com
*ATTORNEY TO BE NOTICED*

<u>**Movant**</u>

**American Gaming Association**                       represented by **Allan B Moore**
*TERMINATED: 07/29/2026*                                        Covington & Burling LLP
One City Center
850 10th St NW
Washington, DC 20001
202–662–5575
Fax: 202–778–5575
Email: abmoore@cov.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/28/2026 | 1 | COMPLAINT against Attorney General of the State of Wisconsin Josh Kaul, John |

| | | |
|---|---|---|
| | | Dillett Administrator Division of Gaming, Anthony S. Evers Governor of Wisconsin, State of Wisconsin, Wisconsin Department of Administration Division of Gaming by United States of America, Commodities Future Trading Commission. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Kaul, # 3 Summons State of Wisconsin, # 4 Summons Division of Gaming, # 5 Summons Dillett, # 6 Summons Evers)(McTague, Alexandra) |
| 04/28/2026 | | NOTICE Regarding assignment of this matter to Magistrate Judge Nancy Joseph; Consent/refusal forms for Magistrate Judge Joseph to be filed within 21 days; the consent/refusal form is available here. (lmu) |
| 04/28/2026 | 2 | NOTICE of Appearance by Colin T Roth on behalf of All Defendants. Attorney(s) appearing: Colin T. Roth (Roth, Colin) |
| 04/28/2026 | 3 | NOTICE of Appearance by Charlotte Gibson on behalf of All Defendants. Attorney(s) appearing: Charlotte Gibson (Gibson, Charlotte) |
| 04/28/2026 | 4 | NOTICE of Appearance by Martin Jordan Minot on behalf of Commodities Future Trading Commission. Attorney(s) appearing: M. Jordan Minot (Minot, Martin) |
| 04/29/2026 | | Summons Issued as to All Defendants. (rcm) |
| 04/30/2026 | | NOTICE from the clerk to DEFENDANTS requesting that the Consent/Refusal form to Magistrate Judge Nancy Joseph be filed within 21 days; the form is available here. (rcm) |
| 05/01/2026 | 5 | NOTICE of Appearance by Anne Whitford Stukes on behalf of Commodity Futures Trading Commission. Attorney(s) appearing: Anne W. Stukes (Stukes, Anne) |
| 05/01/2026 | 6 | MOTION for Preliminary Injunction by All Plaintiffs. (Attachments: # 1 Declaration of Joshua Beale, # 2 Text of Proposed Order)(Stukes, Anne) |
| 05/04/2026 | | NOTICE of Electronic Filing Error re 6 MOTION for Preliminary Injunction filed by Commoditiy Futures Trading Commission, United States of America ; Certain attachments to this document should have been filed as separate entries – Declarations should be filed as stand–alone events. **This document does not need to be re–filed**; Please refer to the policies and procedures for electronic case filing and the user manual found at www.wied.uscourts.gov (rcm) |
| 05/07/2026 | 7 | Magistrate Judge Jurisdiction Form filed by Commodity Futures Trading Commission. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Weisberg, Andrew) |
| 05/08/2026 | | Case Reassigned to Judge William C Griesbach. Magistrate Judge Nancy Joseph no longer assigned to the case. (rcm) |
| 05/12/2026 | | NOTICE of Hearing: Telephone Conference set for 5/14/2026 at 09:20 AM before Judge William C Griesbach. The parties shall call the court Zoom conference line at **669–254–5252**, use **Meeting ID: 161 5758 9308**, press # to bypass Participant ID,and enter **Passcode: 519855** to join the call. To ensure a clear record of the hearing, participants should not use a speaker phone. Participants shall call in prior to the time that the hearing is scheduled to begin so that there is no disruption to the court proceeding. If you have any questions, please contact the Clerks Office at 920–884–3720. (cc: all counsel) (jm) |
| 05/12/2026 | 8 | |

| | | |
|---|---|---|
| | | NOTICE of Appearance by Tiberius T Davis on behalf of United States of America. Attorney(s) appearing: Tiberius Davis (Davis, Tiberius) |
| 05/12/2026 | 9 | MOTION to Change Venue *and memorandum of law in support* by All Defendants. (Attachments: # 1 Text of Proposed Order)(Roth, Colin) |
| 05/12/2026 | 10 | DECLARATION of Winn Collins *re: Defendants' Motion to Transfer Venue and Memorandum of Law in Support* (Roth, Colin) |
| 05/12/2026 | 11 | NOTICE of Appearance by Harper F Beck on behalf of North American Derivatives Exchange, Inc. d/b/a Crypto.com \| Derivatives North America. Attorney(s) appearing: Harper F. Beck (Beck, Harper) |
| 05/12/2026 | 12 | MOTION to Intervene by North American Derivatives Exchange, Inc. d/b/a Crypto.com \| Derivatives North America. (Attachments: # 1 Complaint Proposed Intervenor Complaint)(Beck, Harper) |
| 05/12/2026 | 13 | BRIEF in Support filed by North American Derivatives Exchange, Inc. d/b/a Crypto.com \| Derivatives North America re 12 MOTION to Intervene . (Attachments: # 1 Ex. 1 – Wisconsin State Court Complaint, # 2 Ex. 2 – Wisconsin Motion for Preliminary Injunction)(Beck, Harper) |
| 05/12/2026 | 14 | MOTION for Joinder by North American Derivatives Exchange, Inc. d/b/a Crypto.com \| Derivatives North America. (Beck, Harper) |
| 05/12/2026 | 15 | DISCLOSURE Statement by North American Derivatives Exchange, Inc. d/b/a Crypto.com \| Derivatives North America. (Beck, Harper) |
| 05/13/2026 | 16 | NOTICE of Appearance by Eric G Pearson on behalf of North American Derivatives Exchange, Inc. d/b/a Crypto.com \| Derivatives North America. Attorney(s) appearing: Eric G. Pearson (Pearson, Eric) |
| 05/13/2026 | 17 | BRIEF in Opposition filed by Commodity Futures Trading Commission, United States of America re 9 MOTION to Change Venue *and memorandum of law in support* . (Weisberg, Andrew) |
| 05/13/2026 | 18 | NOTICE of Appearance by Henry Dickman on behalf of Commodity Futures Trading Commission. Attorney(s) appearing: Henry Dickman (Dickman, Henry) |
| 05/13/2026 | 19 | NOTICE of Appearance by Nowell D Bamberger on behalf of North American Derivatives Exchange, Inc. d/b/a Crypto.com \| Derivatives North America. Attorney(s) appearing: Nowell D. Bamberger (Bamberger, Nowell) |
| 05/14/2026 | 20 | Minute Entry for proceedings held before Judge William C Griesbach: Telephone Conference held on 5/14/2026. Defendants' response to 6 Plaintiffs' Motion for Preliminary Injunction due by 6/8/2026. (Tape #Zoom 051426) (kwf) (Entered: 05/15/2026) |
| 05/15/2026 | 21 | TRANSCRIPT of Telephone Conference held on May 14, 2026 before Judge William C. Griesbach Court Reporter/Transcriber Susan Armbruster, Contact at 4142902641. Tape Number: Liberty. Transcripts may be purchased using the Transcript Order Form found on our website or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website www.wied.uscourts.gov Redaction Statement due 6/8/2026. Redacted Transcript Deadline set for 6/18/2026. |

| | | |
|---|---|---|
| | | Release of Transcript Restriction set for 8/17/2026. (Armbruster, Susan) |
| 05/28/2026 | 22 | NOTICE of Appearance by Sarah A Zylstra on behalf of KalshiEX LLC. Attorney(s) appearing: Sarah A Zylstra (Zylstra, Sarah) |
| 05/28/2026 | 23 | MOTION to Intervene by KalshiEX LLC. (Attachments: # 1 Complaint Ex. 1 – Proposed Intervenor Complaint)(Zylstra, Sarah) |
| 05/28/2026 | 24 | BRIEF in Support filed by KalshiEX LLC re 23 MOTION to Intervene . (Zylstra, Sarah) |
| 05/28/2026 | 25 | DISCLOSURE Statement by KalshiEX LLC. (Zylstra, Sarah) |
| 05/28/2026 | 26 | Motion for JOINDER by KalshiEX LLC re 6 MOTION for Preliminary Injunction . (Zylstra, Sarah) Modified event type on 6/5/2026 (jm). |
| 05/29/2026 | 27 | MOTION to Dismiss *for Lack of Standing of Subject−Matter Jurisdiction and Memo of Law in Support* by All Defendants. (Attachments: # 1 Text of Proposed Order)(Roth, Colin) |
| 05/29/2026 | 28 | BRIEF in Opposition filed by All Defendants re 14 MOTION for Joinder , 12 MOTION to Intervene . (Roth, Colin) |
| 06/01/2026 | 29 | NOTICE of Appearance by Margaret P Aisenbrey on behalf of Commodity Futures Trading Commission. Attorney(s) appearing: Margaret Aisenbrey (Aisenbrey, Margaret) |
| 06/04/2026 | 30 | NOTICE of Appearance by Lewis W Beilin on behalf of All Defendants. Attorney(s) appearing: Lewis W. Beilin (Beilin, Lewis) |
| 06/08/2026 | 31 | BRIEF in Opposition filed by All Defendants re 6 MOTION for Preliminary Injunction . (Roth, Colin) |
| 06/08/2026 | 32 | DECLARATION of Matthew Kennedy (Attachments: # 1 Ex. 1 – Kalshi – What is a Prediction Market, # 2 Ex. 2 – What Is Kalshi – A Beginner's Guide, # 3 Ex. 3 – All sports Odds Predictions 2026, # 4 Ex. 4 – Clinical and Research Implications of Gambling, # 5 Ex. 5 – What is gambling disorder, # 6 Ex. 6 – Review Sports – Gambling ExecSummary, # 7 Ex. 7 – Gambling Away Stability)(Roth, Colin) |
| 06/11/2026 | 33 | STIPULATION of Dismissal *as to State of Wisconsin Department of Administration Division of Gaming, John Dillett, Anthony S Evers* by Commodity Futures Trading Commission, United States of America. (Dickman, Henry) |
| 06/11/2026 | 34 | BRIEF in Opposition filed by All Plaintiffs re 27 MOTION to Dismiss *for Lack of Standing of Subject−Matter Jurisdiction and Memo of Law in Support* . (Dickman, Henry) |
| 06/12/2026 | | State of Wisconsin Department of Administration Division of Gaming, John Dillett and Anthony S Evers are dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) upon the 33 Stipulation filed by Plaintiffs. Each party agrees to bear its own costs in connection with this action. (jm) |
| 06/12/2026 | 35 | REPLY BRIEF in Support filed by North American Derivatives Exchange Inc re 12 MOTION to Intervene . (Beck, Harper) |
| 06/16/2026 | 36 | REPLY BRIEF in Support filed by All Plaintiffs re 6 MOTION for Preliminary Injunction . (Dickman, Henry) |

| | | |
|---|---|---|
| 06/17/2026 | 37 | BRIEF in Opposition filed by All Defendants re 23 MOTION to Intervene . (Roth, Colin) |
| 06/18/2026 | 38 | LETTER from Colin Roth *requesting Court to refrain from deciding Plaintiffs' motion for preliminary injunction until Defendants' motion to dismiss is decided*. (Roth, Colin) Modified docket text on 6/22/2026 (mav). |
| 06/18/2026 | 39 | NOTICE by Joshua L Kaul, State of Wisconsin *Of Supplemental Authority* (Attachments: # 1 2026.06.17 – ECF No. 39 – Opinion and Order Denying Robinhood Motion for PI, # 2 2026.06.17 – ECF No. 41 – Opinion and Order Denying Polymarket Motion for PI)(Roth, Colin) |
| 06/22/2026 | 40 | LETTER from Henry Dickman *in response to Defendants' letter dated June 18, 2026*. (Dickman, Henry) |
| 06/22/2026 | 41 | REPLY BRIEF in Support filed by North American Derivatives Exchange Inc re 6 MOTION for Preliminary Injunction . (Beck, Harper) |
| 06/25/2026 | 42 | REPLY BRIEF in Support filed by Joshua L Kaul, State of Wisconsin re 27 MOTION to Dismiss *for Lack of Standing of Subject–Matter Jurisdiction and Memo of Law in Support* . (Roth, Colin) |
| 07/01/2026 | 43 | REPLY BRIEF in Support filed by KalshiEX LLC re 23 MOTION to Intervene . (Zylstra, Sarah) |
| 07/08/2026 | 44 | NOTICE by All Defendants *Defendants' Second Notice of Supplemental Authority* (Attachments: # 1 KalshiEx LLC v. Williams 2026 WL 1961872 [SDNY] [Decision and Order][Denying PI])(Beilin, Lewis) |
| 07/13/2026 | 45 | NOTICE of Appearance by Allan B Moore on behalf of American Gaming Association. Attorney(s) appearing: Allan B. Moore (Moore, Allan) |
| 07/14/2026 | 46 | MOTION to Intervene by American Gaming Association. (Attachments: # 1 Exhibit 1 – Proposed Answer in Intervention)(Moore, Allan) |
| 07/14/2026 | 47 | BRIEF in Support filed by American Gaming Association re 46 MOTION to Intervene . (Moore, Allan) |
| 07/14/2026 | 48 | DISCLOSURE Statement by American Gaming Association. (Moore, Allan) |
| 07/16/2026 | 49 | RESPONSE to Motion filed by North American Derivatives Exchange Inc re 46 MOTION to Intervene . (Beck, Harper) |
| 07/21/2026 | 50 | NOTICE by Joshua L Kaul, State of Wisconsin *Defendants' Third Notice of Supplemental Authority* (Attachments: # 1 State of WA v. KalshiEx 26–2–10264–3 [Wash. Sup. Ct. King Cnty.] Order Granting State of Washington's Amended Motion for Preliminary Injunction)(Beilin, Lewis) |
| 07/23/2026 | 51 | REPLY filed by Joshua L Kaul, State of Wisconsin re 46 MOTION to Intervene . (Beilin, Lewis) |
| 07/28/2026 | 52 | NOTICE by Commodity Futures Trading Commission, United States of America *of Issuance of Supplemental Authority regarding the Plaintiffs' Motion for Preliminary Injunction* (Attachments: # 1 Exhibit A – Order on Plaintiffs' Motions for Preliminary Injunction in United States v. Minnesota (26–cv–2661; D. Minn.))(Weisberg, Andrew) |
| 07/29/2026 | 53 | |

| | | |
|---|---|---|
| | | AMENDED NOTICE by Commodity Futures Trading Commission, United States of America *of Issuance of Supplemental Authority regarding the Plaintiffs' Motion for Preliminary Injunction (amended and replacing Dkt. No. 52)* (Attachments: # 1 Exhibit A – Order on Plaintiffs' Motions for Preliminary Injunction in United States v. Minnesota (26–cv–2661; D. Minn.))(Weisberg, Andrew) |
| 07/29/2026 | 54 | ORDER signed by Judge William C Griesbach on 7/28/2026 denying 26 Motion for Joinder; denying 27 Motion to Dismiss; denying 46 Motion to Intervene; denying 6 Motion for Preliminary Injunction; denying 9 Motion to Change Venue; denying 12 Motion to Intervene; denying 14 Motion for Joinder; and denying 23 Motion to Intervene. The Clerk is directed to place this matter on the court's calendar for a telephone Rule 16 conference to address further scheduling. See Fed. R. Civ. P. 16(b). (cc: all counsel)(Griesbach, William) |
| 07/29/2026 | 55 | NOTICE of Hearing: Rule 16 Telephone Scheduling Conference set for 8/25/2026 at 09:30 AM before Judge William C Griesbach. Rule 26 Discovery Plan due by 8/18/2026. The parties shall call the court Zoom conference line at **669–254–5252**, use **Meeting ID: 161 5758 9308**, press # to bypass Participant ID,and enter **Passcode: 519855** to join the call. To ensure a clear record of the hearing, participants should not use a speaker phone. Participants shall call in prior to the time that the hearing is scheduled to begin so that there is no disruption to the court proceeding. If you have any questions, please contact the Clerks Office at 920–884–3720. (cc: all counsel)(jm) |
| 08/07/2026 | 56 | NOTICE OF APPEAL by Commodity Futures Trading Commission, United States of America. (cc: all counsel) (Minot, Martin) |
| 08/07/2026 | 57 | Docketing Statement by Commodity Futures Trading Commission, United States of America re 56 Notice of Appeal (cc: all counsel) (Minot, Martin) |
| 08/10/2026 | 58 | Attorney Cover Letter re: 56 Notice of Appeal (mav) |

THE UNITED STATES OF AMERICA and
THE COMMODITY FUTURES TRADING
COMMISSION,

        *Plaintiffs,*

      *v.*

STATE OF WISCONSIN, *et al.*,

        *Defendants.*

Case No. 2:26-cv-00749-WCG

## NOTICE OF APPEAL

Plaintiffs-Appellants the United States of America and the Commodity Futures Trading

Commission appeal to the United States Court of Appeals for the Seventh Circuit from the

Decision and Order denying Plaintiffs' Motion for Preliminary Injunction entered by the United

States District Court for the Eastern District of Wisconsin on July 29, 2026, Dkt. No. 54.

Dated: August 7, 2026

Respectfully submitted,

By: */s/ M. Jordan Minot*
    M. Jordan Minot
    Attorney for Plaintiffs-Appellants

*Attorneys for United States of America*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
Counsel to the Assistant Attorney General
450 5th St. NW
Washington, D.C. 20001
Tel: (202) 860-8970
tiberius.davis@usdoj.gov

ALEXANDRA McTAGUE SCHULTE
Senior Litigation Counsel
Tel: (202) 718-0483
alexandra.schulte@usdoj.gov

*Attorneys for Commodity Futures Trading Commission*

TYLER S. BADGLEY
General Counsel
M. JORDAN MINOT
Deputy General Counsel
HENRY J. DICKMAN
Senior Assistant General Counsel
ANDREW WEISBERG
Senior Assistant General Counsel
MARGARET P. AISENBREY
Senior Assistant General Counsel

U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581
Tel: (202) 418-5607
Fax: (202) 418-5567
tbadgley@cftc.gov
jminot@cftc.gov
hdickman@cftc.gov
aweisberg@cftc.gov
maisenbrey@cftc.gov

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

THE UNITED STATES OF AMERICA and
THE COMMODITY FUTURES TRADING
COMMISSION,

*Plaintiffs,*

*v.*

STATE OF WISCONSIN, *et al.*,

*Defendants.*

**DOCKETING STATEMENT**

Case No. 2:26-cv-00749-WCG

Plaintiffs-Appellants the United States of America and the Commodity Futures Trading Commission ("CFTC") hereby submit this docketing statement pursuant to Seventh Circuit Court of Appeals Rule 3(c).

## I.     JURISDICTION OF DISTRICT COURT

The district court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1345 (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). This action presents a federal question under the laws and Constitution of the United States because it concerns whether the Commodity Exchange Act, 7 U.S.C. §§ 1, *et seq.*, preempts Wisconsin's gambling laws insofar as they purport to regulate transactions on CFTC-regulated Designated Contract Markets.

## II.     JURISDICTION OF COURT OF APPEALS

This interlocutory appeal is taken from the interlocutory decision of the U.S. District Court for the Eastern District of Wisconsin denying Plaintiffs' Motion for Preliminary Injunction entered on July 29, 2026, by the Honorable William C. Griesbach, Dkt. No. 54. On August 7, 2026,

Plaintiffs-Appellants timely filed a notice of appeal. The United States Court of Appeals for the

Seventh Circuit has appellate jurisdiction over this case pursuant to 28 U.S.C. § 1292(a)(1).


Dated: August 7, 2026

Respectfully submitted,

By: */s/ M. Jordan Minot*
M. Jordan Minot (Counsel of Record)


*Attorneys for United States of America*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
Counsel to the Assistant Attorney General
450 5th St. NW
Washington, D.C. 20001
Tel: (202) 860-8970
tiberius.davis@usdoj.gov

ALEXANDRA McTAGUE SCHULTE
Senior Litigation Counsel
Tel: (202) 718-0483
alexandra.schulte@usdoj.gov

*Attorneys for Commodity Futures Trading Commission*

TYLER S. BADGLEY
General Counsel
M. JORDAN MINOT
Deputy General Counsel
HENRY J. DICKMAN
Senior Assistant General Counsel
ANDREW WEISBERG
Senior Assistant General Counsel
MARGARET P. AISENBREY
Senior Assistant General Counsel

U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581
Tel: (202) 418-5607
Fax: (202) 418-5567
tbadgley@cftc.gov
jminot@cftc.gov
hdickman@cftc.gov
aweisberg@cftc.gov
maisenbrey@cftc.gov
drubin@cftc.gov

UNITED STATES OF AMERICA and
COMMODITY FUTURES TRADING COMMISSION,

      Plaintiffs,

    v.                                       Case No. 26-C-749

STATE OF WISCONSIN, et al.,

      Defendants.

---

**DECISION AND ORDER DENYING MOTION TO DISMISS,
MOTION TO CHANGE VENUE, MOTIONS TO INTERVENE, AND
MOTION FOR PRELIMINARY INJUNCTION**

---

Plaintiffs the United States of America and the Commodity Futures Trading Commission (hereinafter referred to collectively as the CFTC) commenced this action to enjoin the State of Wisconsin from enforcing Wisconsin gambling statutes against five entities that offer "sports-related event contracts" for trading in Wisconsin. Wisconsin claims that the companies that are offering these "event contracts" are facilitating sports betting, a form of illegal gambling under Wisconsin law. The CFTC argues that the sports-related event contracts are swaps, a type of financial derivative regulated exclusively by federal commodities law, which preempts the Wisconsin gambling statutes as applied to such contracts.

Shortly after commencing the action, the CFTC filed its motion for a preliminary injunction. Dkt. No. 6. The State responded with a motion for a change of venue and, shortly thereafter, a motion to dismiss. Dkt. Nos. 9, 27. In the meantime, two of the companies that offer "sports-related event contracts," North American Derivatives Exchange, Inc., d/b/a Crypto.com | Derivatives North America (CDNA), and KalshiEX LLC (Kalshi), moved to intervene as plaintiffs

and join the CFTC's motion for a preliminary injunction.  Dkt. Nos. 12, 14, 23, & 26.  More recently, the American Gaming Association (the AGA) has filed a motion to intervene as a defendant opposing the CFTC's request for declaratory and injunctive relief.  Dkt. No. 46.  For the reasons set forth below, the State's motions to change venue and to dismiss for lack of standing will be denied.  The motions to intervene will likewise be denied.  Finally, because the CFTC has failed to show a likelihood of success on the merits, its motion for a preliminary injunction will also be denied.

## BACKGROUND

Wisconsin initiated civil enforcement actions on April 23, 2026, against various Designated Contracts Markets (DCMs) and Futures Commission Merchants (FCMs), including Coinbase, Kalshi, Robinhood, Polymarket, and Crypto.com, that allow their customers to trade event contracts based on the outcomes in sporting events.  Compl. ¶ 2, Dkt. No. 1.  In fact, three such actions, originally filed in the Circuit Court for Dane County, were removed to the United States District Court for the Western District of Wisconsin, where motions to remand them to state court based on a lack of federal jurisdiction are pending.  Each of these original state court actions seek declarations that the named defendants are violating Wis. Stat. § 945.03, which prohibits commercial gambling, and causing a public nuisance.  The State also seeks preliminary and permanent injunctions prohibiting the defendants from offering sports-related event contracts for trading in Wisconsin.  *Id.*

A week later, the CFTC commenced this action to enjoin the State of Wisconsin, Governor Tony Evers, Attorney General Josh Kaul, the Department of Administration Division of Gaming, and Division of Gaming Administrator John Dillett from enforcing the State's anti-gambling statutes against the same defendants, arguing that the federal Commodity Exchange Act (CEA),

2

7 U.S.C. § 1 *et seq.*, and CFTC regulations preempt state laws as applied to event contracts. *Id.* ¶ 5. The CFTC argues that the event contracts in question are not "bets" under Wis. Stat. § 945.01(1), but even if they are, Wisconsin gambling statutes are preempted by the CEA, which classifies such contracts as "swaps," a type of financial derivative. *Id.* ¶ 6. The CFTC contends that the State's enforcement of its gambling laws as applied to event contracts intrudes on the exclusive authority granted by the CEA to the CFTC to regulate such contracts. *Id.* ¶ 5. The parties stipulated to dismiss defendants Governor Evers, the Division of Gaming, and Administrator Dillett, leaving as the only defendants the State of Wisconsin and Attorney General Josh Kaul. Dkt. No. 33.

## ANALYSIS

### I. Preliminary Matters

#### A. Venue

The State initially filed a motion to transfer venue in the case to the Western District of Wisconsin on the ground that venue was improper in this district under 28 U.S.C. § 1391 and, alternatively, pursuant to 28 U.S.C. § 1404(a) "[f]or the convenience of the parties and witnesses" and "in the interest of justice." Dkt. No. 9. Neither ground has merit, and so, the motion to change venue is denied.

"A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). The remaining defendants are Attorney General Kaul and the State of Wisconsin. The State contends that because Attorney General Kaul resides in the Western District, venue is proper only in that district. But because all of the defendants are residents of the State of Wisconsin, the action is proper in any district in which any defendant resides.

Case 2:26-cv-00749-WCG   Document 46   Filed 06/10/24   Page 17 of 42   Document 259

"A state is ubiquitous throughout its sovereign borders. The text of the statute therefore dictates that a state with multiple judicial districts 'resides' in every district within its borders." *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018) (citing *Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1329 (N.D. Ala. 2005) (holding that, for purposes of 28 U.S.C. § 1391(e), "common sense dictates that a state resides throughout its sovereign borders")). Because the State of Wisconsin resides in the Eastern District, as well as in the Western District, venue in this district is proper under § 1391(b)(1).

Venue in this district is also appropriate under § 1391(b)(2). That subsection provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2). The purchase of sports-related event contracts, which the State contends constitutes illegal gambling that it seeks to enjoin, is occurring throughout the State. There can be no doubt that a "substantial part" of that activity is occurring in the most populous district in the State, especially since the State's professional baseball, basketball, and football teams are all located in that same district. It thus follows that venue in this district is also appropriate under § 1391(b)(2).

Alternatively, the State argues that venue should be transferred to the Western District pursuant to 28 U.S.C. § 1404(a). That section provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The State argues that the interest of justice warrants transferring the case to the United States District Court for the Western District of Wisconsin because its three enforcement actions raising the same issue are currently pending in that court. A fourth case against Kalshi that raises similar issues brought by the Ho-Chunk Nation, an Indian tribe, is also pending in that court.

4

Having multiple lawsuits moving forward in two different districts that challenge the same law on the same basis, the State contends, is not in the interest of the parties and does not promote judicial economy.  Dkt. No. 9 at 12.

The difficulty with the State's argument is that neither the federal government nor the CFTC is a party to the actions currently pending in the Western District.  The State's three enforcement actions were commenced in state court against private entities, and while they were removed to federal court, the State's motions to remand each to state court for lack of federal jurisdiction are pending.  Given the jurisdictional question in those cases, transferring this case to the Western District may simply delay the CFTC's effort to obtain the federal relief to which it claims it is entitled.  As for the fourth case involving the Ho-Chunk Nation, that case involves claims under the Indian Gaming Regulatory Act (25 U.S.C. § 2701 *et seq.*), the Lanham Act (15 U.S.C. § 1125), and the Racketeer Influenced and Corrupt Practices Act (18 U.S.C. § 1962(c)).  None of these statutes are at issue here.

The convenience factors also fail to favor transfer.  Both parties seem to agree that the issue raised is a legal one that will not require many witnesses, if any.  Moreover, the heavy caseload of the two judges in the Western District militates against any finding that judicial economy would be better served by transferring this case to that District.  The court therefore concludes that transfer of venue pursuant to § 1404(b) is not appropriate.

## B.  Standing

The State has also moved to dismiss for lack of standing.  Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies" brought by litigants who demonstrate standing.  U.S. Const. art. III, § 2, cl. 1.  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 578 U.S.

5

330, 338 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* "In this way, the law of Article III standing serves to prevent the judicial process from being used to usurp the powers of the political branches and confines the federal courts to a properly judicial role." *Id.* (citation modified). "This jurisdictional requirement ensures that the resources of the federal judiciary are not expended on advisory opinions and hypothetical disputes." *Home Care Providers, Inc. v. Hemmelgarn*, 861 F.3d 615, 620 (7th Cir. 2017) (citation omitted).

"The familiar 'triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement.'" *Gracia v. SigmaTron Int'l Inc.*, 986 F.3d 1058, 1064 (7th Cir. 2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998)). The injury-in-fact must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 561.

In this case, it is clear that the business entities that offer sports-related event contracts in Wisconsin, for example, Kalshi and CDNA, will suffer economic loss if the State is allowed to enforce its gambling laws so as to prohibit those activities, and thus those entities clearly have standing. It is not apparent, however, that the federal government would be similarly harmed or suffer an injury in fact if Wisconsin's anti-gambling law is enforced. CFTC argues that federal preemption by itself is sufficient to confer standing on the federal government. Dkt. No. 34 at 11 ("The federal government can vindicate injuries to its sovereignty, including by challenging enforcement of preempted state law."). But the Court has never explicitly so held.

6

The State argues that the federal government, acting through the CFTC, has no standing to bring this action because the CFTC lacks a concrete and particularized injury, and thus fails to satisfy the injury-in-fact requirement of Article III. Dkt. No. 27 at 5. It notes that the CFTC points to no economic or material loss or damage that it would suffer from Wisconsin's enforcement of its own anti-gambling laws against the five entities that offer sports-related event contracts on CFTC-regulated national markets. The closest the CFTC comes at identifying such an injury, the State contends, is the assertion of its Acting Director of the Division of Market Oversight that CFTC staff have diverted resources from core functions to answering questions from CFTC-registered entities about compliance in light of steps taken by State authorities to enforce State gambling laws. Dkt. No. 6-1, ¶ 7. Such a vague and unsupported assertion, the State argues, falls short of establishing the concrete and particularized injury required to support the federal government's standing to bring this action. Dkt. No. 27 at 10–11.

The defect in the State's argument, however, is that it assumes that standing for a private litigant suing to vindicate a private interest is the same as that of the federal government seeking to vindicate a public interest. It fails to distinguish between "private rights" and "public rights." But as Justice Thomas explained in his concurring opinion in *Spokeo*, "courts imposed different limitations on a plaintiff's right to bring suit depending on the type of right the plaintiff sought to vindicate." 578 U.S. at 344 (Thomas, J., concurring). The concern that the judiciary could exceed its proper role in resolving concrete disputes and become entangled in disputes that are "primarily political" is "generally absent when a private plaintiff seeks to enforce only his personal rights against another private party." *Id.* Private rights are traditionally understood as "rights of personal security (including security of reputation), property rights, and contract rights." *Id.* "In a suit for

the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded." *Id.*

The same is not true, however, when a private plaintiff sued for a violation of public rights. This is because "[g]enerally, only the government had the authority to vindicate a harm borne by the public at large, such as the violation of the criminal laws." *Id.* at 345. In those cases where private plaintiffs have been permitted to bring a claim for the violation of public rights, "they had to allege that the violation caused them 'some extraordinary damage, beyond the rest of the [community].'" *Id.* (quoting 3 BLACKSTONE *220 (discussing nuisance)); *see also Lujan*, 504 U.S. at 562 ("Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish.").

The same showing is not needed, however, when it is the government seeking to vindicate public rights. A federal crime, for example, does not inflict any concrete and particularized injury upon the United States. Yet, no one seriously contends that the federal government does not have standing to prosecute individuals for federal crimes. The crucial point is that the government occupies an entirely different position with respect to public interests than a private party, and thus the government's standing to vindicate those interests is not the same as a private litigant's.

This is not to say that the federal government does not need to allege standing in order to establish federal jurisdiction. The fundamental judicial rule that requires that a complainant establish standing before a suit can be properly heard applies to the federal government, just as it applies to a private individual. *United States v. Mattson*, 600 F.2d 1295, 1297, 1300 (9th Cir. 1979) (citing *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 285–86 (1888)). But the federal government's obligation to show standing to assert a public interest is satisfied when it alleges

action by the defendant that harms or interferes with federal policy. Thus, in *United States v. Arizona*, the Court held that the foreign policy of the United States, as reflected in the Nation's immigration laws, preempts a series of statutory enactments by the State of Arizona that sought "to discourage and deter the unlawful entry and presence of aliens and economic activity by persons unlawfully present in the United States." 567 U.S. 387, 393 (2012) (internal quotation omitted). Because several of the provisions of the Arizona law conflicted with federal law on the subject, those provisions were found preempted and thus unenforceable. That is what the CFTC has alleged here.

According to the complaint, the CEA "provides a comprehensive framework for the regulation of commodity derivatives transactions in the United States" and "designates the CFTC as the federal agency with 'exclusive jurisdiction' over the regulation of commodity futures, options, and swaps traded on federally regulated exchanges." Compl. ¶ 1. In enacting the CEA, Congress found that commodity derivatives transactions "are entered into regularly in interstate and international commerce and are affected with a national public interest by providing a means for managing and assuming price risks, discovering prices, or disseminating pricing information through trading in liquid, fair and financially secure trading facilities." 7 U.S.C. § 5(a). The express purposes of the CEA are:

> to serve [these national] public interests . . . through a system of effective self-regulation of trading facilities, clearing systems, market participants and market professionals under the oversight of the Commission. To foster these public interests, it is further the purpose of this chapter to deter and prevent price manipulation or any other disruptions to market integrity; to ensure the financial integrity of all transactions subject to this chapter and the avoidance of systemic risk; to protect all market participants from fraudulent or other abusive sales practices and misuses of customer assets; and to promote responsible innovation and fair competition among boards of trade, other markets and market participants.

9

*Id.* § 5(b). The complaint alleges that "Wisconsin's attempt to criminalize and shut down federally regulated markets intrudes on the exclusive federal scheme Congress designed to oversee national swaps markets." Compl. ¶ 5. The State's ongoing efforts, according to the complaint, "undermine the uniform application of federal law" and "subvert federal law and the exclusive jurisdiction to regulate event contract swaps conferred on the CFTC by Congress." *Id.* ¶¶ 10–11. In short, the complaint alleges that Wisconsin's attempt to enforce its gambling laws to prohibit transactions Congress has found are a regular part of interstate and international commerce undermines the national public interest in providing a means for managing and assuming price risks, discovering prices, or disseminating pricing information through trading in liquid, fair, and financially secure trading facilities. Assuming these allegations are true, which the court must at the pleading stage, *Lujan*, 504 U.S. at 561, this is enough to confer standing on the federal government and the CFTC.

The court reached the same conclusion in *KalshiEX LLC v. Johnson*, No. CV-26-01715-PHX-MTL, 2026 WL 1223373 (D. Ariz. May 5, 2026). There was no question in that case that Kalshi had standing. Kalshi had commenced an action to enjoin certain Arizona state officials from enforcing the state's gambling laws against it in response to the criminal charges they had filed against Kalshi in state court. The question that arose was whether the federal court was required to abstain from deciding whether Kalshi was entitled to such relief under *Younger v. Harris*, 401 U.S. 37 (1971), because Arizona, like Wisconsin, had previously filed an enforcement action against Kalshi in state court. While that case was pending, the CFTC filed its own action against the State, contending that the CEA preempts Arizona's enforcement of its gambling laws against event contracts traded on DCMs. The court consolidated the two actions, and after denying Kalshi's motion for a preliminary injunction, granted the CFTC's motion on substantially the same

10

grounds as Kalshi had asserted. *Johnson*, 2026 WL 1223373, at *1. Addressing the issue of the government's standing, the court stated:

> The federal government "may sue to protect its interests," *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967), and that authority extends to suits seeking to enjoin the enforcement of preempted state law. *See United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906 n.9 (10th Cir. 2016) (reading *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 325–27 (2015), to permit the United States to seek injunctive relief and invoke preemption to protect its interests); *see also Arizona v. United States*, 567 U.S. 387, 416 (2012) (affirming in part a preliminary injunction in favor of the United States against enforcement of preempted state law). The CFTC therefore has standing to seek to enjoin Arizona's enforcement of its gambling laws against event contracts traded on DCMs.

*Id.* at *3; *see also United States v. Minnesota*, No. 26-cv-2661, 26 WL 2150211, at *8 (D. Minn. July 27, 2026) (holding that "the CFTC has shown that it is sufficiently likely to establish the injury-in-fact element of standing").

The court reaches the same conclusion here. Even though the federal government has not suffered the kind of "particularized and concrete" injury or harm that a private party must allege in order to show standing to sue, the allegation that Wisconsin's attempt to enforce its anti-gambling laws to prohibit sports-related events contracts interferes with and undermines the national public interest in authorizing and regulating derivatives and similar financial instruments is sufficient to confer standing on the federal government. The State's motion to dismiss for lack of standing is therefore denied.

## C. Motions to Intervene

Kalshi and CDNA (collectively, Intervening Plaintiffs) have filed motions to intervene and join in the CFTC's motion for a preliminary injunction enjoining the State from enforcing its gambling statutes against them. The Intervening Plaintiffs argue that they are entitled to intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure. In the alternative, the Intervenor Plaintiffs argue that they should be allowed to permissively intervene under Rule 24(b).

11

As relevant here, Rule 24(a)(2) provides that "on timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  The State does not dispute that the motions filed by the Intervening Plaintiffs are timely.  Nor does the State dispute that the Intervenor Plaintiffs "likely have an interest in how this litigation is resolved," though it is unclear whether that is the same as an interest in "the property or transaction that is the subject of the action."  Dkt. No. 28 at 5.  Nevertheless, the State argues that the Intervening Plaintiffs are not entitled to intervention as of right both because the CFTC adequately represents their interests and because the outcome of this litigation will not impair their ability to protect those interests.  The court agrees.

Although it is true that the Intervening Plaintiffs have substantial financial interests in the CFTC's effort to enjoin the State of Wisconsin from enforcing its anti-gambling laws against their sports-related event contracts, the issue presented is essentially one of law—whether the CEA preempts Wisconsin's gambling laws as applied to sports-related event contracts.  The fact that the Intervening Plaintiffs have based a substantial portion of their businesses on the proposition that the CFTC insulates their sports-related event contracts from state gambling laws does not alter the answer to that question.  And it is clear from the CFTC filings in this and other cases around the country that it is vigorously representing its interests on this issue which are aligned with the Intervening Plaintiffs.  The CFTC's representation on the issue is adequate no matter what standard is used.  *See Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019).

The court is also satisfied that the Intervening Plaintiffs are not "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest."

12

The Intervening Plaintiffs are already protecting their interests in the state court actions that were removed to federal court in the Western District. If the State's motions to remand are granted, the Intervening Plaintiffs will have a full and fair opportunity to press their argument that Wisconsin's attempt to enforce its gambling laws against them are preempted in the state court actions. If the State's motions are not granted, they will be able to pursue the same relief in the district court. In neither event will they be bound by any decision this court renders, since they are not parties to this proceeding.

Finally, the court notes that if the Intervening Plaintiffs had commenced this action on their own, the court would have abstained from deciding the case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), in light of the pending state court actions against them. *Younger* affirmed a "longstanding public policy against federal court interference with state court proceedings." *Id.* at 43. The policy rests on "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44. As the doctrine has developed, "*Younger* abstention is called for in exactly three classes of cases: where federal jurisdiction would intrude into ongoing state criminal proceedings, or into certain civil enforcement proceedings (judicial or administrative) akin to criminal prosecutions, or into civil proceedings 'that implicate a State's interest in enforcing the orders and judgments of its courts.'" *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 815 (7th Cir. 2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). This case plainly falls within its scope. To grant the Intervening Plaintiffs' motions to intervene in this action would intrude into civil enforcement proceedings akin to criminal prosecutions.

13

This last consideration also warrants denial of the Intervening Plaintiffs' alternative argument that they should be granted permissive intervention. Rule 24(b), which governs permissive intervention, states in relevant part: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." In exercising the discretion afforded under this Rule, however, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Because of the need for the court to avoid intruding on the action initiated by the State against the Intervening Plaintiffs, permitting them to intervene in this case will delay decision on the CFTC's motion for a preliminary injunction. For this reason, and because the CFTC's representation of their position on the legal issue before the court is adequate, the motion for permissive intervention is denied.

Finally, the American Gaming Association (AGA), whose members include commercial and tribal casino operators, suppliers, and sport betting operators across the country, has recently filed a motion to intervene as a defendant in opposition to the CFTC's Complaint for Declaratory and Injunctive Relief. Dkt. No. 46. The AGA contends that the sweeping ruling the federal government seeks "would permit prediction markets to offer sports wagers while avoiding the extensive state and tribal regulatory obligations that govern every other participant in the legal gaming industry." Dkt. No. 47 at 6. "If accepted," the AGA argues, "that theory would adversely affect AGA members, who have invested billions of dollars, entered into long-term commercial arrangements, and structured their businesses around the settled understanding that sport wagering is regulated by states and tribes, not the CFTC." *Id.* Given the interest of its members, the AGA contends, like the Intervening Plaintiffs, it is entitled to intervene as of right. Alternatively, also like the Intervening Plaintiffs, the AGA seeks permissive intervention.

14

The AGA's motion to intervene as of right is denied for the same reasons that the motions of the Intervening Plaintiffs are denied. Its members have no interest relating to the property or transaction that is the subject of the action that is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest. In fact, the interests of the AGA's members is even more remote than that of the Intervening Plaintiffs. Moreover, just as the CFTC is adequately representing the interest that the Intervening Plaintiffs have in the action, so also the State of Wisconsin is adequately representing the interests of the AGA members in opposing the CFTC's assertion of exclusive jurisdiction over the sports-related event contracts of the companies it regulates. The AGA's motion to intervene as of right is therefore denied.

The AGA's alternative request for permissive intervention is also denied. Having denied the Intervening Plaintiffs' motion for permissive intervention, it seems only fair that the motion of the AGA, whose members' interests are more remote, should also be denied. Like the Intervening Plaintiffs, the AGA contends that its members have large sums of money at stake. But the legal issue presented in this case is not dependent upon the amount of money either side stands to lose. The question presented is whether the federal CEA preempts Wisconsin's statutory prohibition of gambling as applied to CFTC-regulated markets and market participants. It is to that question that the court now turns.

## II. Motion for Preliminary Injunction

The CFTC seeks a preliminary injunction to prevent the State from enforcing its gambling statutes against entities such as Kalshi and CDNA. Dkt. No. 6 at 15. The CFTC argues that Wisconsin gambling statutes do not cover the event contracts in question, and even assuming they do, federal commodities regulations preempt the Wisconsin statutes. *Id.* at 16. Of course, if Wisconsin's gambling statutes do not cover sports-related event contracts, then the CFTC's case

15

against the State makes no sense. There is no reason to enjoin the State from enforcing a statute that does not apply. The application of the State's gambling statutes is ultimately a state-law question. But for purposes of deciding whether there is even a justiciable controversy, the court notes that the plain language of Wisconsin's commercial gambling statute seems to cover sports-related event contracts registered with the CFTC. The statute provides that whoever intentionally and for gain "uses a wire communication facility for the transmission or receipt of information assisting in the placing of a bet or offer to bet on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of a bet or offer to bet" is guilty of a Class I felony. Wis. Stat. § 945.03(1m)(g). A Class I felony is punishable by "a fine not to exceed $10,000 or imprisonment not to exceed 3 years and 6 months, or both." Wis. Stat. § 939.50(3)(i). The sports-related event contracts offered on the prediction markets operated by the companies that Wisconsin has sued in state court would seem to fall well within the scope of the statute. The court therefore turns to the question whether the State's enforcement of its gambling statute should be enjoined.

A preliminary injunction is an exceptional remedy, "never to be indulged . . . except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (internal quotation marks and citations omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). A plaintiff seeking a preliminary injunction must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The balance of equities "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice

16

versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). The court must analyze the CFTC's claims with regard to each of these factors.

In undertaking this task, the court finds especially helpful and persuasive the careful and thorough analysis of several courts that have recently addressed this same issue. *See KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667 (D. Md. 2025) (denying motion for preliminary injunction enjoining enforcement of state gambling law); *N. Am. Derivatives Exch., Inc. v. Nev. Gaming Control Bd.*, 815 F. Supp. 3d 1169 (D. Nev. 2025) (same); *KalshiEX, LLC v. Hendrick*, 817 F. Supp. 3d 1014 (D. Nev. 2025) (same); *KalshiEX, LLC v. Schuler*, No. 2:25-cv-1165, 2026 WL 657004 (S.D. Ohio Mar. 9, 2026); *QCX LLC v. Nessel*, No. 1:26-cv-710, 2026 WL 1895958 (W.D. Mich. June 17, 2026) (same); *KalshiEX LLC v. Williams,* No. 25 Civ. 8846 (AT), 2026 WL 1961872 (S.D.N.Y. July 7, 2026) (same); *but see KalshiEX, LLC v. Flaherty*, 172 F.4th 220 (3d Cir. 2026) (affirming district court decision enjoining enforcement of state law prohibiting sports-related events contracts); *KalshiEX LLC v. Orgel*, No. 3:26-cv-00034, 2026 WL 474869 (M.D. Tenn. Feb. 19, 2026) (granting injunction enjoining enforcement of state gambling statute); *Johnson*, 2026 WL 1223373 (same); *United States v. Minnesota*, 26 WL 2150211, at *18 (same).

## A. Likelihood of Success on the Merits

"The first step in the analysis requires a plaintiff to demonstrate that [his] claim has some likelihood of success on the merits, not merely a better than negligible chance." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022) (internal quotation marks and citation omitted) (alteration in original). The CFTC argues that it is likely to prevail on the merits of its argument that federal commodities regulations cover sports-related event contracts and that state gambling law as applied to such contracts is therefore preempted. Dkt. No. 6 at 10. In the view of the CFTC, Congress entrusted it with exclusive jurisdiction over such instruments by virtue of its enactment

of the Wall Street Reform and Consumer Protection Act of 2010 (the Dodd-Frank Act), which extended the CFTC's regulatory authority over "transactions involving swaps." Compl. ¶ 53 (citing Pub. L. No. 111-203, 124 Stat. 1376 (2010); 7 U.S.C. § 2(a)(1)(A)).

In assessing the CFTC's argument, the court must be mindful of "the 'background principle' that when a federal statute touches on 'areas of traditional state responsibility,' courts must look for a clear statement from Congress that it intended to 'effect a significant change in the sensitive relation between' the federal and state governments." *Nessel*, 2026 WL 1895958, at *1 (quoting *Bond v. United States*, 572 U.S. 844, 858 (2014)). Gambling is an area of traditional state responsibility. For "it is well-established that the regulation of gambling, . . . is a legitimate state interest." *Northville Downs v. Granholm*, 622 F.3d 579, 587 (6th Cir. 2010). "A state's gambling laws reflect 'the state's paramount interest in the health, welfare, safety, and morals of its citizens' and thus 'lie[] at the heart of the state's police power.'" *Nessel*, 2026 WL 1895958, at *5 (quoting *Johnson v. Collins Ent. Co.*, 199 F.3d 710, 720 (4th Cir. 1999)). In short, "[t]he power of the state to enact laws to suppress gambling cannot be doubted . . . ." *Marvin v. Trout*, 199 U.S. 212, 224 (1905). Thus, for the CFTC to prevail on its claim that Wisconsin cannot enforce its gambling statute to prohibit the sports-related event contracts, it must point to a clear congressional statement.

### 1. The CEA's Definition of "Swaps"

The CFTC argues that event contracts are "swaps" within the meaning of 7 U.S.C. § 1a(47)(A)(ii), which defines swaps as "any agreement, contract, or transaction . . . that provides for any purchase, sale, payment, or delivery (other than a dividend on an equity security) that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence." 7

U.S.C. § 1a(47)(A)(ii); Dkt. No. 6 at 19–20.  In the CFTC's view, this definition would encompass

agreements, contracts, or transactions that pay based on the outcomes of elections and sporting

events, given their impact on "tax and spending policy . . . ticket and merchandise sales,

advertising, brand endorsements, vendors, lodging businesses, and food and beverage services."

Dkt. No. 6 at 20.  Indeed, it is difficult to imagine any agreement, contract, or transaction that this

definition would not cover.  As one court addressing the issue has observed, when removed from

its context,

> the definition of the term "swap" becomes so broad that it sweeps in any agreement
> or transaction dependent on anything happening that could conceivably result in any
> degree of financial consequence for anyone.  This would intrude not only on the
> province of state gambling law but also contract law (service contracts), property
> law (mortgages), and family law (prenuptial agreements), among others.  It is
> difficult to imagine anything that would not have any potential financial
> consequence, especially if the downstream consequences could include others
> betting on the event.  Plaintiff's reading would make many transactions across all
> spheres of life into "swaps," and thus unlawful unless they are "entered into on, or
> subject to the rules of, a board of trade designated as a contract market." 7 U.S.C.
> § 2(e).

*Nessel*, 2026 WL 1895958, at *6.

When faced with statutory language of such breadth and imprecision, the Court has noted

the importance of context in discerning its meaning: "[A] statute's meaning does not always turn

solely on the broadest imaginable definitions of its component words. . . . Linguistic and statutory

context also matter." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018) (internal quotation marks

and citation omitted).  Faced with this same definition of the term "swap" in *KalshiEX v. Schuler*,

the court explained:

> Where, as here, undefined terms lead to a dispute over a statute's meaning, courts
> walk the "well-trod path" of statutory interpretation.  *United States v. Fitzgerald*,
> 906 F.3d 437, 442 (6th Cir. 2018).  On the first pass, those terms are given their
> "ordinary and natural meaning." *Id.* (quoting *United States v. Miller*, 734 F.3d 530,
> 540 (6th Cir. 2013)).  But if "a word in isolation is susceptible of multiple
> meanings," courts also consider the word's "placement and purpose in the statutory

19

scheme." *Id.* (quoting *Miller* at 540). Finally, "working only within the range of 'textually permissible meanings,' [courts] consider which of those interpretations would serve, rather than frustrate, the statute's manifest purpose." *Id.* at 442–43 (quoting Antonin Scalia & Bryan A. Garner, Reading Law 57 (2012)). It follows that "courts should not construe a statute to produce an absurd result that [the court is] confident Congress did not intend." *Id.* at 447.

2026 WL 657004, at *4.

The purpose of the CEA as laid out by Congress was to "to deter and prevent price manipulation or any other disruptions to market integrity; to ensure the financial integrity of all transactions subject to this chapter and the avoidance of systemic risk; to protect all market participants from fraudulent or other abusive sales practices and misuses of customer assets; and to promote responsible innovation and fair competition among boards of trade, other markets and market participants." 7 U.S.C. § 5(b).

As the court in *Schuler* recently explained, "[t]hese goals are better achieved when a 'swap' is understood as a transaction involving financial instruments and measures that traditionally and directly <u>affect</u> <u>commodity prices</u>. Currency exchange rates, the weather, and energy costs all do that; the number of points scored in the Huskies-Bobcats game does not." 2026 WL 657004, at *6. The court reached the same conclusion in *Nessel*:

> Plaintiff's sports-related products do not fall within the statutory definition of "swap." Congress included language in that definition, "associated with," which can only be defined by reference to context and purpose. Context and purpose make clear that Congress intended the definition of swap to capture a set of products in the financial industry which caused the 2008 financial crisis and threatened to create other crises in the future, and not to place broad swaths of everyday economic activity under the authority of the Commodity Futures Trading Commission. "Associated with" thus takes on the more limited sense it frequently does in ordinary use rather than extending to infinity as it hypothetically can, and the part of the swap definition on which Plaintiff relies requires an inherent connection with potential economic consequences that Plaintiff's sports products lack. Plaintiff's attempts to rehabilitate its understanding that the swap definition is effectively unbounded rely on faulty readings of other statutory provisions and regulations.

2026 WL 1895958, at *8.  Other courts have reached the same conclusion.  *See Crypto.com*, 815

F. Supp. 3d at 1183–84 ("Crypto's live presentation industry event contracts are not swaps because,

as Crypto self-certified to the CFTC, these contracts turn on the outcome of the live event, not on

the 'occurrence, nonoccurrence, or the extent of the occurrence' of a live event."); *Hendrick*, 817

F. Supp. 3d at 1026 (same); *see also* Ilya Beylin, *Event Contracts Are a Step Too Far for*

*Derivatives Regulation*, 4 U. CHI. BUS. L. REV. 128–40 (2025) ("The CFTC has ignored its

decades-long jurisdictional drift.  The agency can and should undertake a review of traded products

to delist those that have only attenuated connection to the purposes of the CEA.  Many products

should not benefit from preemption, and instead, be subject to state law—including restrictions on

gambling.").

At least at this stage of the proceedings, this court finds the analyses provided by these

courts persuasive.  Although a divided panel of the Third Circuit concluded that sports-related

event contracts do fall within the CEA's definition of "swap" in *Flaherty*, 172 F.4th at 227–28, the

majority offered no limiting principle to the definition that, according to the dissent, taken to its

logical extreme could lead to "a rationality-defying outcome."  *Id.* at 233 (Roth, J., dissenting).

Notwithstanding the *Flaherty* majority's conclusion, this court finds that the CFTC has not shown

that it is likely to prevail on its argument that the CEA's definition of "swaps" covers the event

contracts offered by entities such as Kalshi.  For this reason alone, the CFTC's motion for a

preliminary injunction would be denied.

### 2.  Preemption

Even if event contracts do fall under the CEA's definition of "swaps," the CFTC is unlikely

to prevail on its argument that the CEA preempts state law.  Preemption can take one of three

forms: express, conflict, or field preemption.  *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928

F.3d 639, 646 (7th Cir. 2019) (citation omitted). Express preemption involves a declaration by Congress of an intent to preempt state law. *Id.* Conflict preemption occurs either when a person cannot comply with both state and federal law at the same time or when state law impedes the implementation of congressional objectives. *Id.* at 646–47. Field preemption applies when Congress has legislated with regard to an area of law in so pervasive a manner as to lead to the conclusion that Congress did not intend for states to further regulate that area. *Id.* at 647. The CFTC argues that Wisconsin gambling statutes are preempted under all three forms. Dkt. No. 6 at 10–11.

### a. Express Preemption

The CFTC argues that the CEA's grant of "exclusive jurisdiction" to the CFTC to regulate swaps, 7 U.S.C. § 2(a)(1)(A), is an express preemption provision that bars states from regulating event contracts such as those targeted by the State's enforcement action. Dkt. No. 6 at 25–26. But as the Sixth Circuit noted in its decision denying Kalshi's motion for a preliminary injunction pending its appeal from the court's decision denying its motion for an injunction in *Schuler,* the CEA's grant of "exclusive jurisdiction" applies to the CFTC in contrast to other agencies, not in contrast to other laws. *KalshiEX LLC v. Schuler*, No. 26-3196, 2026 WL 1295806, at *4 (6th Cir. Apr. 24, 2026). The court explained that the "exclusive jurisdiction" language, read in its broader context of the statutory scheme as a whole, indicates that the CEA does not preempt all state laws. Some provisions of the CEA do expressly preempt state law in certain circumstances, using the language "shall supersede and preempt the application of any State or local law." *See, e.g.*, 7 U.S.C. § 16(e)(2). The invocation of this express preemption language suggested to the court that state law is not preempted in other circumstances. *Schuler*, 2026 WL 1295806, at *4. This court agrees.

### b. Field Preemption

The CFTC argues that the scope of the CEA indicates that Congress intended to occupy the field of commodities regulation, leaving no room for statutes such as Wisconsin's. Dkt. No. 6 at 28. As the Seventh Circuit has recognized, however, field preemption applies in very few circumstances. *Nelson*, 928 F.3d at 652 ("[T]he absence of language indicating an intent to occupy the field weighs heavily, of course, 'in favor of holding that it was the intent of Congress *not* to occupy the field.' . . . Field preemption is confined to only a few areas of the law, such as the National Labor Relations Act . . . and the Employee Retirement Income Security Act." (citations omitted)).

As noted above, the party challenging a statute as preempted carries a particularly heavy burden when the subject matter of the statute is an area traditionally regulated by the states. *See, e.g.*, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) ("[W]e start with the assumption that the historic police powers of the States were not to be superseded by [federal law] unless that was the clear and manifest purpose of Congress."). Sports gambling is an area traditionally regulated by the states. *See, e.g.*, *Vill. of Rosemont v. Jaffe*, 482 F.3d 926, 937 (7th Cir. 2007). This presumption weighs more heavily in favor of Wisconsin's enforcement of its gambling laws than it did in favor of the state immigration laws at issue in *Arizona*, since immigration is an area regulated primarily by the federal government as provided for in the Constitution. U.S. Const. art. I, § 8; *Arizona*, 567 U.S. at 394.

The CFTC argues that the State's enforcement against companies like Kalshi and CDNA "increases the risk [to said companies] *in complying with federal law.*" Dkt. No. 6 at 31 (emphasis added). But this implies that the regulated companies must choose between complying with state or with federal law, which is not the case. Compliance with Wisconsin law only requires that the

companies abstain from certain activities that the CFTC claims are *permitted*, not *required*, under the CEA. As the State points out, "[b]y complying with stricter state law, prediction markets necessarily comply with more forgiving federal law." Dkt. No. 31 at 21.

The CFTC argues that the State's enforcement of its statutes intrudes upon federal sovereignty because if the State can prohibit sports-related event contracts, the CFTC is powerless to permit those same contracts. Dkt. No. 34 at 18. But this argument fails to demonstrate an understanding of the distinction between permitting an activity and guaranteeing a right to that activity. The federal commodities regulations cited by the CFTC may permit DCMs to offer event contracts, but they do not guarantee a right to offer such contracts or require DCMs to offer them, nor do they prohibit states from banning them altogether. Given the above-discussed provisions in the CEA which indicate that states retain the ability to regulate commodities outside those specific circumstances in which federal law explicitly preempts them from doing so, the CFTC has failed to carry its burden to show that Wisconsin's gambling statutes are field-preempted.

### c. Conflict Preemption

The CFTC also contends that the State's laws are conflict preempted by the CFTC's regulations. Dkt. No. 6 at 28. "[C]onflict preemption exists when either (1) 'compliance with both federal and state regulations is a physical impossibility' or (2) state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Wisconsinites for Alts. to Smoking & Tobacco, Inc. v. Casey*, 172 F.4th 976, 986 (7th Cir. 2026) (citations omitted).

The CFTC argues that the State's enforcement of its statutes against entities such as Kalshi and CDNA forces such entities to violate 17 C.F.R. § 38.151(b), which requires them to provide "impartial access to [their] markets and services." Dkt. No. 9 at 22; 17 C.F.R. § 38.151(b). The

24

CFTC interprets § 38.151(b) to prohibit DCMs from offering products in some states but not in others.  Dkt. No. 9 at 22.  The DCMs would thus be confronted with the dilemma of either offering their products in every state in compliance with federal law or refusing to offer them in Wisconsin in compliance with Wisconsin law.  *Id.*  But the CFTC has not cited any authority supporting its contention that "impartial access" means that DCMs have to offer all the same products to every customer in every location.  As the Sixth Circuit ruled in *Schuler*, § 38.151(b) may be read convincingly as a non-discrimination provision.  2026 WL 1295806, at *6; *see also Flaherty*, 172 F.4th at 239 (Roth, J., dissenting).

Furthermore, another CFTC regulation forbids registered entities from listing contracts that involve activities which are unlawful under state law.  17 C.F.R. § 40.11(a)(1).  This regulation could bar an entity from offering certain contracts in one state that it may offer in another, which directly contradicts the CFTC's interpretation of the "impartial access" requirement.  *See Schuler*, 2026 WL 1295806, at *6.  Section 38.151(b) is therefore most convincingly read as not requiring regulated entities to offer the same products in every state.  Wisconsin's gambling statutes do not conflict with federal commodities regulations and are not preempted by them.  "There is no implied conflict preemption if there is no conflict."  *Casey*, 172 F.4th at 988.

To be sure, the Third Circuit came to the opposite conclusion.  *Flaherty*, 172 F.4th at 229.  That court's analysis, however, states only that the enforcement of state gambling statutes stands as an obstacle to federal objectives by creating a patchwork of state regulation.  *Id.* at 230.  The court did not identify any way in which compliance with state law would require a regulated party to violate federal law.

25

### B. Irreparable Harm and Inadequate Remedies at Law

The CFTC argues that it will suffer irreparable harm if the court does not enjoin the State's enforcement of its gambling statutes. Dkt. No. 6 at 30. A litigant may be granted a preliminary injunction only if he can demonstrate that he will suffer harm "that cannot be prevented or fully rectified by the final judgment after trial." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). The CFTC argues that its "ability to enforce its policies and achieve its objectives will be undermined by the state's enforcement of statutes that interfere with federal law." Dkt. No. 6 at 30. It also argues that the federal government's regulation of the commodities market will be disrupted by the enforcement of the Wisconsin statutes, which will "increase[] the risk to companies [such as those affected] *in complying with federal law*." *Id.* at 31 (emphasis added). But this argument suggests that the regulated entities' attempt to comply with Wisconsin law would put them at risk of violating federal law, which, as previously discussed, is not the case. Furthermore, the regulated entities, rather than the CFTC, would be the proper plaintiffs to challenge the State's enforcement of its statutes and to allege irreparable harm from the risk of enforcement. The CFTC has not demonstrated that it will suffer irreparable harm if the State is not preliminarily enjoined from enforcing its gambling statutes.

Consideration of harm to CDNA and Kalshi would not change the result. In *Kalshi v. Williams*, for example, Kalshi argued that without an injunction, it would face "the threat of civil and criminal enforcement by the Gaming Commission, disruption to its business in New York and nationwide, including the cost of 'comprehensively geolocat[ing] its users on a state-by-state basis,' and harm to its reputation, including the possibility that the CFTC could revoke Kalshi's designation as a DCM." 2026 WL 1961872, at *10. The court rejected Kalshi's argument, noting that while the prospect of being subject to criminal prosecution could demonstrate a showing of

irreparable injury, Kalshi's harms were largely monetary. Any civil fines that could be levied would be vacated if Kalshi ultimately prevailed on the merits, which the court had concluded in considering the merits was unlikely. And Kalshi's argument that geolocating its users on a state-by-state basis would constitute irreparable injury was found "unpersuasive because the ordinary burdens and costs of complying with government regulation are typically insufficient to constitute irreparable harm." Finally, Kalshi had presented no evidence that the CFTC would revoke its designation as a DCM. *Id.* Other courts have rejected similar arguments. *See, e.g.*, *Nessel*, 2026 WL 1895958, at *13; *Schuler*, 2026 WL 657004, at *10; *Hendricks*, 817 F. Supp. 3d at 1034–37.

## C. Balance of Equities

The CFTC argues that the balance of equities favors granting a preliminary injunction because enjoining the State's enforcement of its gambling statutes "would be less harmful than allowing state laws that are likely preempted by federal law to be enforced." Dkt. No. 6 at 32. As discussed above, the court does not accept the premise that federal law likely preempts Wisconsin gambling statutes. Furthermore, the parties most likely to suffer harm if an injunction is not granted are the regulated entities who would lose the opportunity to profit from the sale of event contracts. Again, this would make them, as opposed to the CFTC, the proper parties to challenge the State's enforcement of its statutes.

The State, on the other hand, has identified an interest in exercising its traditional police powers to prevent the risks associated with gambling addiction. Dkt. No. 31 at 30. The State notes that "[t]he American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders categorizes gambling disorder as an addictive disorder." *Id.* at 27 (citing Dkt. Nos. 32-4 & 22-5). The State also cites a review of sports wagering and gambling addiction studies conducted by the National Council on Problem Gambling which shows that "[t]he rate of gambling

27

problems among sports bettors is at least twice as high as among gamblers in general," and "the rate of problems is even higher" when sports wagering takes place online, "with one study of online sports gamblers indicating that 16% met clinical criteria for gambling disorder and another 13% showed some signs of gambling problems." *Id.* at 27–28 (citing Dkt. No. 32-6 at 1). Since the CFTC has failed to show any significant harm, let alone harm that would outweigh that suffered by the State, the court finds that the balance of equities does not favor granting a preliminary injunction.

## CONCLUSION

For the reasons set forth above, the court concludes that venue is proper in this district and the CFTC has standing to bring this action. The State's motions to change venue (Dkt. No. 9) and dismiss (Dkt. No. 27) are therefore **DENIED**. The motions to intervene and joinder by CDNA (Dkt. Nos. 12, 14) and Kashi (Dkt. Nos. 23, 26) are **DENIED**, as is the motion to intervene by the AGA (Dkt. No. 46). Finally, because the CFTC has failed to show that it is likely to prevail on the merits of its argument, that it will suffer irreparable harm, or that the balance of equities favors it, its motion for a preliminary injunction enjoining the State from enforcing its gambling statute (Dkt. No. 6) is **DENIED**. The Clerk is directed to place this matter on the court's calendar for a telephone Rule 16 conference to address further scheduling. *See* Fed. R. Civ. P. 16(b).

**SO ORDERED** at Green Bay, Wisconsin this 28th day of July, 2026.

William C. Griesbach
United States District Judge

28